THE AMERICAN BIBLE SOCIETY *vs.* HEBARD and MITCHELL, executors, &c.

A testator, by his will, gave and bequeathed to his executors, $1200, to be taken from any funds belonging to his estate, directing them to invest the same in the purchase of a dwelling house and lot, such as should be selected by his wife, and gave her the use of such house and lot for life. And he directed his executors, after her death, to sell the same, and pay over the proceeds of the sale, in equal shares, to the plaintiffs and a missionary society. This, together with other provisions of the will for his wife, the testator declared to be upon the condition that she should accept the same in lieu of dower, thirds or other share of his estate. The wife survived the testator about a month, and died before the probate of the will, and without having elected to accept the provisions thereof for her benefit, in lieu of dower, &c.; and the executors did not purchase any house and lot under the trust.

*Held,* that the plaintiffs became entitled, absolutely and unconditionally, to one half of the fund of $1200 given to the executors in trust, upon the death of the widow of the testator, payable at the expiration of one year next after the issuing of the letters testamentary.

*Held, also,* that the plaintiffs took, as legatees, merely, the bequest, discharged from the incumbrance of the trust. That their right to one half the contemplated fund was a vested right from the beginning, or, in any event, at the death of the widow. That an action in the nature of a legal action, to recover the legacy, could have been maintained at the end of a year from the granting of letters; and that, as more than six years had elapsed since the expiration of the year, before the action was commenced, the claim was barred by the statute of limitations.

ACTION against the defendants, as executors, &c. to recover the amount of a legacy. Elijah Hebard, the testator, died January 25, 1858, leaving a last will and testament, by which he gave and bequeathed to his executors, the defendants, $1200, to be taken from any funds belonging to his estate, directing them to invest the same, as soon as practicable, in the purchase of a dwelling house and premises in the village of Geneva, such as should be selected by his wife, Hannah Hebard, and gave her the *use and enjoyment of such dwelling house and premises during her natural life,* and directed his executors, after her death, to sell the same and pay over the proceeds of such sale, in equal shares, to the financial officers of the Missionary Society of the Methodist Episcopal Church, and the American Bible Society, for the spread of the gospel. This, together with other provisions of the will for his wife, the testator declared in his will to be *upon the condition that she should accept the same in lieu of dower, thirds, or other share of his estate.* Hannah Hebard survived her husband, but died on the 27th day of February, 1858, one month and two days after the decease of her husband, and before the probate of the will, and without having elected to accept the provisions thereof for her benefit, in lieu of dower, or other share of the testator's estate; and the executors did not purchase any dwelling house and premises under this trust. The will was proved, and letters testamentary were granted to the defendants on the 10th day of March, 1858. This action was commenced on the 7th day of August, 1866. As early as the 15th day

of November, 1859, the defendants had ample funds of the estate to pay the amount claimed by the plaintiffs, over and above all other demands, and have ever since had sufficient funds for that purpose. The cause was tried before the court, without a jury. The judge found the facts above stated, and decided, as matter of law, that the plaintiffs, on the death of Hannah Hebard, became entitled, absolutely, to one half of the sum of $1200 so bequeathed to the executors; that the right of action to recover the same accrued at the expiration of one year after the granting of letters testamentary to the defendants, but that such right of action was barred by the statute of limitations before the commencement of this action, and he directed that judgment be entered in favor of the defendants for their costs. Judgment having been so entered, the plaintiffs appealed to this court.

*S. A. Foot*, for the appellants. I. The third clause of the will, embracing the provision in question, is a bequest of personal property to the defendants, *in trust*, for the widow of the testator and the plaintiffs. By it, the defendants, *as trustees*, were vested with the title to the said $1200 to convert into real estate, and after the death of the widow to reconvert into money, and pay over to the plaintiffs and the Missionary Society of the Methodist Episcopal Church, in equal shares. This is a valid, active and technical trust of personal property, and takes its character from the language of the will, and not from the subsequent death of the widow of the testator. (1 *Jarman on Wills*, marg. 524, 525. *Hawley* v. *James*, 5 *Paige*, 318. *Kane* v. *Gott*, 24 *Wend*. 641. *Savage* v. *Burnham*, 17 *N. Y. Rep*. 561. *Leggett* v. *Perkins*, 2 *Comst*. 298. *Brewster* v. *Striker*, *Id*. 19. *Brown* v. *Harris*, 25 *Barb*. 124. *Van Vechten* v. *Van Veghten*, 8 *Paige*, 128. *Judson* v. *Gibbons*, 5 *Wend*. 224. *The People* v. *Robinson*, 17 *How. Pr*. 534.) From the time of accounting and settling of

the estate, if not before, the defendants had the money in question, not in their character as executors, but as legatees and trustees. The will does not direct them to perform acts within the range of their duties as executors, but vests in them the title to the property, and directs them what to do with it. They stand in the position described by Chancellor Walworth in *Valentine* v. *Valentine*, (2 *Barb. Ch.* 438,) which would entitle them to double commissions. (*See also Drake* v. *Price*, 1 *Seld.* 430.)

II. The rule is, that no lapse of time bars a direct and express trust, as between the trustee and *cestui que trust*. (*Decouche* v. *Savetier*, 3 *John. Ch.* 190, 216. *Goodrich* v. *Pendleton*, 3 *id.* 384. *Arden* v. *Arden*, 1 *id.* 316. *Coster* v. *Murray*, 5 *id.* 522. *Murray* v. *Coster*, 20 *John.* 582,) It is shown the defendants, in their character of executors, had in hand $16,348.13. Of this, $1200 was given them upon the said trust, to invest for the widow and convert into money again for the plaintiffs. If this is, or was, a trust, it never has been terminated; it still subsists, and the widow having died, and thus rendered the investment of the $1200 in land unnecessary to effectuate the testator's intention, that sum passed to the defendants, as trustees, by virtue of the bequest, and they still hold it as such trustees. It is true that, as executors, they had an accounting in 1859, but of this the plaintiffs had no notice, and, except such accounting, there has been no attempt to close this trust.

III. If, indeed, there were any limitation of time for the commencement of this action, the period of such limitation is "ten" or "twenty" years. (*Code of Procedure*, §§ 73 *and* 90, *sub.* 2, § 97.) Before the enactment of the Revised Statutes, strictly speaking, the statute of limitations did not apply to a court of equity. That court, however, adopted it, but with its own restrictions, which were, that in cases of fraud and trust it should not apply. (*Murray* v. *Coster*, 20 *John.* 582. *Decouche* v. *Savetier*, 3

*John. Ch.* 190. *Arden* v. *Arden,* 1 *id.* 316.) At a later period, and after the legislature had given, by statute, a concurrent remedy to courts of law in certain cases, before then cognizable solely by a court of equity, the court of chancery, in the exercise of its discretion, adopted the rule laid down by the chancellor in *Kane* v. *Bloodgood,* that where there is a legal and an equitable remedy, in respect to the same subject matter, the latter is under the same statute bar as the former. (*See Kane* v. *Bloodgood,* 7 *John. Ch.* 118; *Rundle* v. *Allison,* 34 *N. Y. Rep.* 182.)

IV. But the claim at bar is in the first place upon a *technical, direct* and *active* trust; and in the second place does not fall within that class of cases for which a remedy is given at law. (2 *R. S.* 114, § 9.) 1. The fund in question was given to the defendants, not as executors, but as *trustees,* the term "executors" in the said third clause, being merely descriptive and used only to identify the persons to whom the trust was committed. It is not, therefore, in their character as executors, but in that as trustees that they are responsible to the plaintiffs; and the remedy to compel an executor to pay a legacy does not apply. (2 *R. S.* 114, § 9. *Judson* v. *Gibbons,* 5 *Wend.* 224. *Conklin* v. *Egerton's adm'rs,* 21 *id.* 430. *Dominick* v. *Michael,* 4 *Sandf.* 374. *The People* v. *Robinson,* 17 *How. Pr.* 534.) 2. Where a power is given to executors by their individual names, or as in the present will, to executors "hereinafter named," it is certain that it vests in all who are thus named, whether they prove the will or not. (*Dominick* v. *Michael,* 4 *Sandf.* 400. *See also Judson* v. *Gibbons,* and *Conklin* v. *Egerton's adm'rs, above cited.*) 3. Suppose that the widow of the testator had lived, and selected a house, and the defendants had renounced as executors, the administrators *cum testamento annexo* could not have exercised the power given to the defendants to purchase. It is a personal trust, and does not pass to the administrators with the will annexed. (*Judson* v. *Gibbons; Dominick* v.

*Michael; Conklin* v. *Egerton's adm'rs, supra.*) Or, suppose one of the defendants to have accepted the executorship, and the other to have renounced, still the exercise of the power to purchase a dwelling house must have been executed by both in their character as trustees, and could not have been exercised by the executor alone. (*Judson* v. *Gibbons, supra.*) Again, the statute was not intended to apply to a testamentary provision like the one in question; but to cases of direct legacies without the intervention of a trust, and contemplates only such legacies as from their character necessarily devolve upon the executor *virtute officii* to pay. (2 *R. S.* 114, § 9, 1*st ed.*) The trust constituted by the provision of the will in question, was one not necessarily committed to the executors, and is not committed to them *ratione officii.* The language is "unto my executors hereinafter named." This indicates that the trust is to them as individuals, and has been repeatedly so held. (*Dominick* v. *Michael, Conklin* v. *Egerton's adm'rs, supra.*) Any other persons possessing the confidence of the testator might as legally and properly have been the trustees of this fund, though the defendants had still have been the executors of the will, and in such case would have been responsible to the plaintiffs, in precisely the same character that the defendants are, to wit. as trustees, and the only remedy, one in equity. That such was the character of the legacies mentioned in the statute referred to, is apparent from the language of that statute. It provides that the legatee may have an action against the executor for his legacy, "after the expiration of one year from the granting of letters testamentary." Now, suppose that in the case under consideration, the widow of the testator had lived, and had selected " a dwelling house," under the provisions in question, the defendants had purchased it, and she had been living in and enjoying it, at the expiration of "one year from the granting of letters testamentary," will it be pretended that the plaintiffs could then

American Bible Society *v.* Hebard.

have brought an action against the executors, under the statute referred to? And if not, then it is not for the reason that the provision in question is not a legacy within the meaning of the statute? If it be said, that as the widow died before the probate of the will, the trust became a mere passive one, and the plaintiff might have brought an action to recover the $600, it may be answered that as the legal title to the $1200, was in the defendants, as trustees, such action must have been an equitable one, and might, therefore, be brought within ten years.

V. But whatever may have been the rule adopted by the court of chancery, in the exercise of its discretion, and following the analogy of the statute in relation to actions at law, before the Revised Statutes took effect, or afterwards under the provisions of those statutes, it is clear that since the enactment of the Code of Procedure, those rules are of no effect as to causes of action since accrued, and the only rule or law in force upon that subject is that embraced in such Code. (*See Code of Procedure*, § 73.) 1. The action which the plaintiff is or ever was entitled to maintain against the defendants, is an action for relief. (*Code*, § 129.) Even under the statute above referred to, (2 *R. S.* 114, § 9,) the language being, " he shall be liable to such action as the case may require," the defendants were liable only to an action " for relief." Unless, then, this action came within the first subdivision of section 91 of the Code, it was only necessary to bring it within ten years. (*Code*, § 97.) But it is apparent that subdivision one of section 91 was not designed to embrace actions for relief, for the subsequent subdivisions of that section are exclusively devoted to providing what actions for relief are required to be brought within six years, and exclude any construction of the first subdivision that would make it include any action for relief. (*See* § 91, *subdivisions* 2–6.) Some subsequent sections of the Code provide within what shorter period than six

American Bible Society *v.* Hebard.

years certain other actions for relief shall be brought, and finally section 97 provides that "an action for relief not hereinbefore provided for, must be commenced within ten years after the cause of action accrued." 2. But again, this action is "upon a sealed instrument." The will in question was sealed. It is true, the seal was not necessary to the validity of the will. Neither is it necessary to the validity of a promissory note, or a lease, or an award, and yet if attached to either of these instruments, the rule of limitation applying to them is thereby changed from "six" to "twenty" years. (*Hodsden* v. *Harridge*, 2 *Saund.* 64. *Smith* v. *Lockwood,* 7 *Wend.* 241. 2 *R. S.* 295, § 18, *subds.* 1, 3, 1*st ed.*) 3. A statute of limitation is in derogation of the common law, and should be construed strictly. (*Co. Litt.* 115. *Murray* v. *Coster*, 20 *John.* 592.)

VI. This was a specific bequest to persons named also as executors, and is therefore distinguishable from the cases of *Drake* v. *Price*, (1 *Seld.* 430,) and *Valentine* v. *Valentine*, (2 *Barb. Ch.* 430.) The doctrine of those cases is, therefore, inapplicable here. .

VII. The defendants having in violation of their trust and of their duty, kept possession of the fund in question, for several years, and (especially the defendant Mitchell) having mixed the moneys thereof with their own, the plaintiffs are entitled as a part of the relief in this action, to be allowed interest on the same, and annual rests in the calculations of that interest.

This relief is of equitable jurisdiction exclusively. It is therefore available to the plaintiff at any time within ten years from the death of the testator. And the court at general term proceeding to give such judgment as the court at special term should have given may from the printed case, find the facts which show the breach of trust above claimed, and may adjudge relief accordingly.

*H. L. Comstock*, for the respondents. I. Assuming that the plaintiff became entitled, at any time, to the $600 claimed, the cause of action therefor was barred by the statute of limitations before the commencement of this action, for the following reasons, viz: 1. It is declared by statute, that "where the purposes for which an express trust shall have been created, shall have *ceased*, the estate of the trustees shall also cease," and so the courts have frequently ruled. (2 *R. S.* 780, § 67. *In the matter of De Kay*, 4 *Paige*, 403. *Hawley* v. *James*, 5 *id*. 318, 458. *Bellings* v. *Shafer*, 2 *Sandf. Ch.* 293, 296. *Lorillard* v. *Coster*, 5 *Paige*, 226. *Nicoll* v. *Walworth*, 4 *Denio*, 385.) 2. The purpose for which the $1200 was bequeathed to the defendants had *failed*, or *ceased to exist*, before the probate of the will, and before the money came into the defendants' hands. (*a*.) This fund was bequeathed to the executors for a certain specified purpose, viz: To enable them to purchase a dwelling house and premises *for the use of Hannah Hebard during her life*, she to select the same, and to accept the provisions of the will for her benefit in lieu of dower; and after her death, they were directed to sell the premises, convert the same into money, and pay over the proceeds of such sale, in equal shares, to the plaintiffs and the Missionary Society of the Methodist Episcopal Church. (*b*.) The special, active trust, from its very nature, could continue only during the life of Mrs. Hebard, or until the dwelling house and premises should have been sold, if one had been purchased pursuant to the will. (*c*.) Mrs. Hebard having died before the probate of the will, and before the money came into the defendants' hands, without having made the selection or election required of her, the defendants were never authorized to purchase a dwelling house and premises with this fund. (*d*.) As no such purchase had been, or could be made, there was no trust in the executors after the decease of Mrs. Hebard, except that which every executor has in the personal estate of his tes-

tator.   3. If the defendants are liable at all, it must be in the character in which they have been sued, viz. as *executors of the will*, and the object of the action is to recover a legacy.   (*Stagg* v. *Jackson*, 2 *Barb. Ch.* 86.   *Same case on appeal*, 2 *Comst.* 206.   *Drake* v. *Price*, 1 *Seld.* 430.   *Leitch* v. *Wells*, 48 *Barb.* 637.   *Valentine* v. *Valentine*, 2 *Barb. Ch.* 430.)   4. The plaintiff's right to the money, (if it ever had any such right,) became absolute immediately after the death of Mrs. Hebard, and the cause of action accrued at the expiration of one year after the granting of letters testamentary to the defendants, and more than six years before the commencement of this action.   (2 *R. S.* 90, § 45. *Id.* 114, § 9.   *Clark* v. *Ford*, 34 *How. Pr.* 478.)   5. The cause of action became barred at the expiration of six years from the time it accrued.   (*a.*)  Before the adoption of the Code, and even before the Revised Statutes were enacted, it was abundantly settled that where there was a legal and an equitable remedy, in respect to the same subject matter, the latter remedy is subject to the same limitation of time as the former.   (*Humbert* v. *Trinity Church*, 7 *Paige*, 195. *Same case on appeal*, 24 *Wend.* 587.   *Souzer* v. *De Meyer*, 2 *Paige*, 574.   *Pratt* v. *Northam*, 5 *Mason*, 95.   2 *R. S.* 301, § 49.)   (*b.*)  In this state, the right to maintain an action at law to recover a legacy was given by statute at a very early period, and was incorporated in the Revised Statutes, and such actions have been frequently sustained.   (*Rickets* v. *Livingston*, 2 *John. Cas.* 97.   *Van Bramer* v. *Executors of Hoffman*, *Id.* 200.   *Dewitt* v. *Schoonmaker*, 2 *John.* 242. *Dewitt* v. *Yates*, 10 *id.* 156.   2 *R. S.* 114, § 9.)   (*c.*)  It follows, as a necessary result, that the six years' limitation prescribed by the Revised Statutes applies to an action, or other legal proceeding to recover a legacy, where the right of action arose under that statute, and so the courts have held.   (*Clark* v. *Ford*, 34 *How. Pr.* 476.   *Smith* v. *Remington*, 42 *Barb.* 75.   *McCartee* v. *Camel*, 1 *Barb. Ch.*

456.) (d.) The Code has not enlarged the time for bringing such an action. (§ 91, *compared with* 2 *R. S.* 295, § 18. *Rundle* v. *Allison*, 34 *N. Y. Rep.* 180, 183.) (e.) The claim that this case comes within section 90 of the Code is absurd; and the claim that the case falls with the provision in section 97, though a little more plausible, is equally erroneous. (*Compare* 2 *R. S.* 301, § 52.) 6. If it were true that the defendants held the money only as trustees, and not as executors, it would make no difference in this case; for after the death of Mrs. Hebard, the purposes of the trust ceased, and the title of the trustees also ceased; and from that time they held the funds to the use of the two societies, and the same might be recovered in an action at law, and the right of action would be subject to the six years' limitation prescribed by section 91 of the Code.) (*Maury* v. *Mason*, 8 *Porter*, 211. *Murray* v. *Coster*, 20 *John.* 576. *Borst* v. *Corey*, 15 *N. Y. Rep.* 505.) 7. The rule invoked by the appellant, that no lapse of time will bar the remedy of a *cestui que trust* against his trustee, applies only to those technical and continuing trusts which are not at all cognizable at law, but fall within the peculiar and exclusive jurisdiction of a court of equity. (*Kane* v. *Bloodgood*, 7 *John. Ch.* 90, 111. *Lyon* v. *Macklay*, 1 *Watts*, 271. *Raymond* v. *Simonson*, 4 *Blackf.* 77.)

II. The plaintiff never had any right to the money sought to be recovered, for the following reasons, viz: 1. The provision for Mrs. Hebard, in the third clause of the will, was *conditional*, depending upon her selecting a dwelling house and premises in the village of Geneva, and electing to accept the provisions of the will for her benefit, in lieu of dower, thirds, or other share of the testator's estate. 2. Mrs. Hebard could not take a life estate in the premises to be purchased until they were purchased; and the purchase could not be made until she performed the conditions upon which the defendants were directed to make such purchase; and therefore the conditions were,

in their very nature, *conditions precedent* to the vesting of any interest in Mrs. Hebard under the third clause of the will. 3. Mrs. Hebard could not take the interest of the money in lieu of the use of the real estate to be purchased, for there is no bequest to her of the use of the money as such. 4. The bequest to the plaintiff was *contingent*, depending upon the performance, by Mrs. Hebard, of the conditions upon which the defendants were directed to purchase a dwelling house and premises for her use during her life. (*a.*) If the testator had declared in his will, in so many words, that in case his wife should comply with the conditions upon which the executors were directed to purchase a dwelling house and premises for her use, then the same should be purchased, and after her death the executors should sell the same, and divide the proceeds of such sale equally between the plaintiff and the missionary society, it would have been very clear that the bequest of the proceeds of such sale could not take effect, except upon the contingencies provided for in the will; for the court would not speculate as to what the testator would *probably* have done if he had anticipated the event which has happened. (*Doo* v. *Brabant*, 3 *Bro. C. C.* 393. *S. C. in K. B.* 4 *T. R.* 706. *Williams* v. *Jones*, 1 *Russ. Ch.* 517. *Humberstone* v. *Stanton*, 1 *Ves. & Bea.* 385. *Taylor* v. *Wendel*, 4 *Brad. Sur.* 324.) (*b.*) The bequest to the plaintiff is just as contingent as though the language of the will had been as last supposed; for the gift is only of *one-half of the proceeds of the sale of certain real estate*, to be purchased, and afterwards sold upon certain conditions, which might, or might not be performed; and as those conditions have not been performed, there are no proceeds of sale of such real estate, and, consequently, the bequest cannot take effect. (*c.*) If, instead of bequeathing the proceeds of the sale of the real estate, the testator had devised the *premises* to the societies, in equal shares, it would have been certain that the devise could not take

effect in the event which has happened; for there would be *no such premises*, and no right on the part of the defendant to purchase any; and it would have been equally certain that the devisees could not claim the $1200 instead of the premises.    (*d.*) The gift is none the less contingent because it is of the proceeds of the sale of the real estate, instead of the real estate itself; for it was just as *uncertain* whether there would be any proceeds of sale, as it would have been in the case last supposed, whether there would be any real estate answering the description.    (*e.*) There is no absolute and unqualified bequest to the plaintiffs, any more than there is an absolute and unqualified devise to Mrs. Hebard; but the devise is to take effect upon the performance of certain conditions by the devisee, and in that event, the land is to be sold after the death of the devisee, and one half of the money realized from such sale is to be paid to the plaintiffs.    There is no alternative provision, giving the plaintiffs one half of the $1200 in case the land should not be purchased, nor can such a provision be supplied by construction.    There is no certain or unconditional trust created in favor of either the plaintiffs or Mrs. Hebard.    The testator has pointed out the mode in which, and the conditions upon which, his bounty should take effect; and it is not within the sphere of construction to alter the mode, or to change the conditions prescribed in the will.    (*f.*) The testator has not provided for the event which has happened, in any other manner than by the residuary clause of his will; and there is no satisfactory reason to suppose that he intended to do so, or even that he would have done so if he had anticipated that event.    Any opinion which may be formed upon that subject, must be purely conjectural.    To supply this deficiency would not be construing what is written in the will, but it would be adding a new and distinct provision.    (*g.*) In regard to estates over, where the first estate depends upon a *condition precedent,* which for any reason fails

to be peformed, so that the first estate never vests, it seems to be the rule in England that the estate over will fail also, as being dependent upon that of the first donee. (*Boyce* v. *Boyce,* 16 *Sim.* 476. *Philpot* v. *St. George's Hospital,* 21 *Beav.* 131. *Roundel* v. *Currier,* 2 *Bro. C. C.* 67.) Whether this be true as a general rule or not, it would seem that it must be so in a case like this, where the testator did not own the estate intended to be given to the first donee for life, upon certain conditions, but provided for its purchase upon such conditions, and the bequest over is of the proceeds of the sale of such uncertain estate. 5. In order to uphold the plaintiff's case, it is necessary for the court to hold, as the plaintiff's counsel contends, that the provision in the third clause of the will is an absolute and unconditional bequest of the $1200 to the defendants *in trust,* for the use of Mrs. Hebard during her life, and for the two societies after her death, whether any dwelling house and premises should be purchased with this fund or not, and whether the conditions upon which such purchase was directed to be made should be complied with or not. If this be so, then Mrs. Hebard might have refused to select any dwelling house and premises in Geneva, and still claim the interest or income of the $1200 as long as she lived; and thus the testator's obvious intention to provide for her a home for life, in a specified village, might be defeated. There is no language in the will upon which such a construction can be based, and it is inconsistent with what is there written. But perhaps it will be said, admitting that the trust in favor of Mrs. Hebard was conditional, and that it failed for want of compliance with the conditions, the bequest to the two societies is absolute; and that upon the death of Mrs. Hebard they are entitled to the money, if it has not been invested as provided in the will, though the conditions upon which it was directed to be so invested have not been performed. But the difficulty in the way of this

construction is, that the *testator* has not expressed *any intention* to give to the two societies the $1200, or any interest therein, unless the money should be invested in a dwelling house and premises in Geneva, upon the performance of the conditions upon which it was directed to be so invested. Suppose Mrs. Hebard had elected to accept the provisions made for her in the will, in lieu of dower, and had selected a house and lot in Geneva, which could be purchased for $1000, and the executors had purchased the same for that sum; what would have become of the other $200? Could Mrs. Hebard justly have claimed the income of this sum during her life? Clearly not. Could the two societies lawfully have claimed the principal after the widow's death? The gift to the two societies is in the form of a direction to the executors. The direction is to sell the dwelling house and premises, convert the same into money, and the *said money* pay over to the two societies, in equal shares. There is no direction to pay over to these societies any other money, or any money not arising from such a sale.

*By the Court,* JOHNSON, J. The learned judge was right, I think, in holding at special term, as matter of law, that the plaintiffs became entitled absolutely to one half the fund of $1200, given to the executors in trust, upon the death of the widow of the testator. The defendants controvert this conclusion of law, and contend that by the failure of the widow to elect to accept the provisions made for her, in the will, in lieu of dower, in her lifetime, she having died before accepting, and before the period when she would be deemed in law to have accepted, the whole provision failed, and the trust, and trust fund with it, and no such fund ever vested in the executors. This is insisted upon for the purpose of sustaining the judgment in case it should be determined that the plaintiffs' claim is not barred by the statute of limitations. It is in this view

only that the examination of this question is proper upon the plaintiffs' appeal. In that view, and for that purpose, it is proper, because if the judgment is such an one as the court, upon all the facts, ought to have rendered, it will be sustained, though placed upon untenable ground at the special term. But the defendants' position, though sustained by an elaborate and very ingenious and plausible argument, is not maintainable. The fund was created by the testator, and given to his executors for a two fold purpose, and upon a double trust, viz: To be invested in a particular manner, and to be used and enjoyed in that form, by his widow, during her life, and at her death to be reconverted into money, and one half thereof paid over to the plaintiffs. This fund, if it ever vested in the executors as trustees, certainly vested in them for all the purposes of the trust.

It is true, as the defendants contend, that so far as the widow is concerned, this provision, with all the other provisions of the will in her favor, was provisional, and conditioned upon her acceptance of them in lieu of her dower right. It is also true, as found by the judge, as matter of fact, that the widow died within about a month after the decease of the testator, without making her election to accept the provisions of the will in her favor, and without the selection of a dwelling house, in the purchase of which the fund was to be invested by the terms of the will. But it does not follow that this state of facts operated to divest the plaintiffs of all right and title to this fund, and cast the fund back into the mass of the funds of the estate. The plaintiffs and the other society, were the ultimate beneficiaries, or legatees of this fund, and were entitled to it absolutely, each to one half thereof, in its own right, the moment the right to the intermediate, or temporary use and enjoyment became extinguished, and the executors, if the title ever vested in them, took and held it for their benefit, as well as for the benefit of the

widow until her right to the use no longer existed, when it became absolutely the property of these two societies. This is plainly the scheme of the will, and the evident intent of the testator. Evidently it was not intended that the plaintiffs' rights should depend entirely for their existence, upon the election of the widow to accept or reject the provisions of the will in her favor. She is not, anywhere in the will, clothed with the power of making the provision in the plaintiffs' favor valid or void at her pleasure. She might neglect or refuse to take the benefit of the provision for herself, but she could not in that way destroy the rights of the plaintiffs. The moment the right to the intervening use was extingushed, no matter how, the rights of the plaintiffs, which were in their nature ultimate and absolute, to the fund, became complete and perfect. What these plaintiffs and the other society were entitled to by virtue of the bequest, was the amount of this fund, whatever that amount might be, when the prior right, to use and enjoy, should no longer exist. It was by no means essential to the existence, or validity of the plaintiffs' right, that the fund should first be invested in the purchase of a house. That pertained to the interest of the widow only. Whatever form the fund might exist in, before the plaintiffs were entitled to possession, it was to come to the plaintiffs in the form of money only. Had it been converted into real estate, it might have been more or less than $1200, when reconverted into money for the use of the plaintiffs and the other society, and then each would have taken one half, whether the amount was more or less. But as all prior right of use was extinguished before the fund had been converted into real estate, and while it existed in the hands of the executors, as it first came to them, the plaintiffs were entitled to one half, or six hundred dollars absolutely and unconditionally, payable at the expiration of one year next after the issuing of the letters testamentary. In that the plaintiffs took, as legatees

merely, the bequest discharged from the incumbrance of the trust.

The question then arises whether the plaintiffs' claim is not barred by the statute. It is obvious that the widow of the testator, having died without making her election to accept the provisions of the will in her favor, and before she could be deemed in law to have accepted the same, never became a beneficiary in fact or in law, of the trust fund intended for her benefit. The relation of trustees, and *cestui que trust* between her and the executors, the foundation of which was laid in the will, was never formed and matured, and no claims on the one side, or duties and obligations or the other, belonging to that relation, ever sprung up or existed between the parties. In that the contemplated trust, so far as she was concerned, never went into effect, and the laudable designs and intentions of the testator towards her, were frustrated, and rendered altogether unavailing by her demise before electing to become a beneficiary of the proffered trust fund. This removed all obstacles to the immediate possession and enjoyment of one half the fund by the plaintiffs. The executors, then, held it for the plaintiffs solely, and had no duty to perform in regard to it, except to pay it over. In fact the widow died before the will was admitted to probate, and all the provisions of the will, by which an active and technical trust was intended to be created, had been rendered abortive, before the funds actually came to the hands of the defendants. The trust intended never having gone into operation, or had a legal existence, there never was any technical trust in favor of the plaintiffs, and no relation of trustee and *cestui que trust* of that character between the plaintiffs and the defendants. The relation was simply that of executor and legatee, and the trust was of that character only. The right of the plaintiffs to the half of the contemplated fund, was a vested right from the beginning, or in any event at the death of the widow,

and an action could unquestionably have been maintained therefor immediately upon the expiration of the year after the granting of letters testamentary. (2 *R. S.* 214, § 9.) If an action could have been maintained in the nature of a legal action to recover the legacy bequeathed, the right of action is barred by statute, as more than six years had elapsed since the expiration of the year, before this action was commenced. This is well settled. (*Smith* v. *Remington,* (42 *Barb.* 75, *and cases there cited.*) Where there is a strict technical and continuing trust, which is cognizable only in a court of equity, no lapse of time will bar the claim of the *cestui que trust.* But this rule is confined strictly to cases of that character. (*Borst* v. *Corey,* 15 *N. Y. Rep.* 505.) That this is no such case seems to me extremely clear. There can, I think, be no reasonable doubt that this claim was cognizable in a legal action. Indeed such is clearly the character of the action brought. It is to recover a specific sum of money, bequeathed, and not to enforce a trust as such. The court at special term was right, therefore, in holding that the right of action was barred by the statute of limitations, and the judgment must be affirmed.

[Monroe General Term, September 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]