WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-
GATE.—September, 1880.

## WOOD *v.* RUSCO.

*In the matter of the accounting of* SILAS B. RUSCO, *administrator, &c., of* EZRA DEAN, *deceased.*

The claim of a person entitled to share in the estate of an intestate, is not barred if presented within six years after the claimant learns of the appointment of an administrator, although more than six years have elapsed since such appointment. Such a claimant comes within § 410 of the Code of Civil Procedure, subd. 1.

*It seems,* that where such a claimant is ignorant of the appointment of an administrator, the demand required by § 9, 2 *R. S.,* 114, to confer jurisdiction upon a court of law, cannot be made, and the limitation of ten years applies.

In 1871, the half-brother of the intestate was appointed administrator on a petition alleging that there was no widow or child. In 1880 the petitioner, the widow of the intestate, but who had remarried, applied for an accounting, and the payment of her distributive share. It appeared that the widow had no knowledge of the appointment of the administrator until 1879. *Held,* that her claim was not barred by the statute of limitations.

Claims of an administrator against the estate are to be regarded with suspicion where they are not based upon some written obligation of the decedent.

Where an administrator or executor claims an allowance for a debt due from the deceased, he must, if the claim is objected to, verify it in the same way as he may require any other creditor to do under § 35, 2 *R. S.,* 88. And where the administrator is sworn on his own behalf, without objection, but fails to testify that no payments have been made on account of his claim, or that there are no offsets against it, the claim must be rejected, as these are affirmative facts to be established by the claimant.

The administrator, upon his accounting, claimed a large sum for boarding the intestate. The claim was objected to. The administrator was allowed to testify without objection to the transactions with the deceased upon which the claim was based, but failed to state that no payments had been made on account of his claim, or that there were no offsets to the same. There were also, other suspicious circumstances connected with the claim. *Held,* that the claim must be rejected.

On August 16, 1871, letters of administration on the estate of the intestate were issued to Silas B. Rusco, on his petition, which set forth among other things, that he was a half-brother of the intestate, that he left him surviving no widow or child, but left a mother, whose renunciation of her right to administer, was produced and filed. The administrator filed an inventory of the personal estate on the 28th day of the same month, amounting to $655.71. On March 26, 1880, Harriet E. Wood claiming to be the widow of the intestate, but having remarried, filed a petition in which she prayed for a citation summoning the administrator to render an account, and for a decree directing him to pay her distributive share of said estate. On the return of the citation, the administrator appeared and objected that she was not such widow, and subsequently filed his account.

The petitioner produced a certificate of her marriage to the deceased, and also the evidence of eye-witnesses of the marriage ceremony. The administrator introduced evidence to the effect that she abandoned her husband for the society of another man, some years before his death, claiming that she "had a bill" from him. The administrator also interposed the statute of limitations against the claim of the widow. In the account filed by him was included a claim he made for boarding the intestate, in his life-time, amounting to $773.50 and interest. To this claim the petitioner objected, and also interposed the like statute, and much testimony was taken as to its merits. It was shown, that the petitioner had no knowledge of the appointment of the administrator, until within a year past.

Other facts are stated in the opinion.

L. C. PLATT & ROBERT S. HART, *for petitioner.*

ODLE CLOSE, *for administrator.*

THE SURROGATE.—There can be no question that the petitioner was the widow of the intestate, nor is the objection that she was not, seriously urged.

The leading case of McCartee *v.* Cornel (1 *Barb. Ch.,* 455), cited to support the objection of the statute of limitations against the widow's claim, does not determine the question as to whether a court of common law had jurisdiction in such a case as this, nor do any of the subsequent cases.

All the authorities cited by the learned counsel for the administrator, so far as they discuss the question, agree that independent of any statute on the subject, courts of law had no jurisdiction of an action to recover legacies and distributive shares; and that where, by statute, they have concurrent jurisdiction with the Surrogate's Court and a court of equity, the period of limitation is six years, and where they have not, the period is ten years. Now, by 2 *R. S.,* 114, § 9, a court of law is clothed with jurisdiction only on certain conditions; 1st, a year must have elapsed since the granting of letters; 2d, there must be more than assets sufficient to pay the debts; 3d, a demand must be made; 4th, a bond with sureties must be tendered; 5th, there must be a refusal by the executor or administrator to pay. All of these are jurisdictional facts, the absence of any one of which would be sufficient to deprive a court of law of jurisdiction. It is a familiar rule that where a new power, in derogation of the common law, is conferred upon a court

by statute, it can be exercised only by a strict compliance with the statutory requirements.

In this case the widow, when she made this application to me, had taken no proceedings under the section above quoted, and, as it was optional for her to avail herself of its provisions, I am inclined to think the neglect to do so would not prevent the six years' limitation from attaching, provided she had been in a position enabling her to act. She was not. She had no knowledge that Rusco was administrator until within a year past, and when it was too late to proceed under section 9. She, therefore, could make no demand for her distributive share, and a court of law could not be clothed with jurisdiction. Whether this fact alone would prevent the application of the rule of the six years' limitation, and extend it to that of ten (and I am disposed to think it would), it is unnecessary to determine, because I think section 410 of the Code of Civil Procedure disposes of the question. It provides that:

"Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete, except in one of the following cases:

"1st. Where the right grows out of the receipt or detention of money or property by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends."

Clearly, if she did not know that Rusco had become administrator, she did not know that he had received

any of the property of the decedent's estate as such, and therefore had not actual knowledge of the facts upon which her right to make the demand depended, until within the past year. Hence, her claim is not barred by any period of limitation fixed by law, either before or under the new Code of Civil Procedure.

The claim which the administrator makes for the boarding, &c., of the intestate, stands on the same footing as the claim of any other creditor. (Williams v. Purdy, 6 *Paige*, 166.) It must be proved in the same way, and is subject to the same defenses. Formerly he could, without proving his claim, have retained sufficient assets to satisfy it, and thus escape the application of the statute of limitations. Then, he had no other way of satisfying it. He could not sue himself in any court. But the statute (2 *R. S.*, 88, § 33, as amended by ch. 460, § 37, *Laws of* 1837) declared that he should not retain any of the assets to satisfy any such claim, until it should be proved to and allowed by the Surrogate, in the manner and at the times therein provided. It has been held that as to such claims the statute of limitations (*i. e.*, that of six years) might be interposed by any party in interest. (Treat v. Fortune, 2 *Bradf.*, 116, approved by the Supreme Court in Willcox v. Smith, 26 *Barb.*, 316, 335, 355.) But by an act of the legislature (*Session Laws of* 1868, p. 1231) it has since been enacted that the statute of limitations shall not commence to run until the time of the first accounting of the executor or administrator ; and this is his first accounting.

Hence it becomes necessary to consider the merits of the administrator's claim.

In proceeding to do so, it may be remarked that such claims are apt to be regarded with some degree of suspicion, where they are not based upon some written obligation of the decedent, and even then they are generally deemed worthy of close scrutiny. Such claims usually relate to transactions between the decedent and the administrator, and the latter alone remains to give his version of the matter. In this case the administrator, in his verified account, claims for board of the intestate the sum of $773.50, and in the affidavit appended swears that "the foregoing account is in all respects just and true." And then, in his testimony, he swears to facts which show that there is only $448 due to him on that account. Beside that, the testimony of Mr. Raymond, a witness called on his behalf, shows that he told him, pending this litigation, that he was to board the deceased for $3.50 a week, who was to pay down $2, and *reserve the residue to constitute a fund with which he could ultimately pay the balance.* This would seem to have been a very absurd arrangement.

Another feature of this matter has impressed itself upon my mind. The evidence goes to show that the deceased was a plain man, living a frugal life, among a people whose habits were primitive and inexpensive; that he earned about $1.50 per day and that his board was worth about $3.50 per week. The inventory shows that he left in money about $616, and in clothing (including the trunk), in value, $25 ; and, all told, assets to the amount of $655. During the last six years of his life he, therefore, earned about $2,800 ; his board at $3.50 per week, during the same period, would amount to

about $1,100; leaving a balance of $1,700. Of this he had remaining at his death, as per inventory, $655. He, therefore, after paying the board in full, would have had left for clothing and other expenses for the same period $1,045, or about $175 a year, which would seem ample for a person of his apparently economical habits; to which the small value of the clothing left by him furnishes a clue. It will be seen that, independent of any other considerations, there is no little doubt cast upon the claim by the facts above stated. But there remains a question as to whether it can, under the most favorable aspect of the testimony on his side, be allowed to the administrator, whatever the sum may be.

It was held by Chancellor WALWORTH, as already stated in Purdy *v.* Williams (*supra*), and re-affirmed by him in Clark *v.* Clark (8 *Paige*, 157), that where an executor or administrator claims an allowance for a debt due from the deceased, on his final accounting, he is in the same situation as any other creditor. The Chancellor says: "He must, therefore, not only verify the justice of his claim by his oath, but if it is objected to, he must establish it by legal evidence, in addition to his own oath. The object of requiring the affidavit of the creditor in such cases, is, not to prove the existence of the debt, as it is not evidence for that purpose, but to prevent the exhibition of fictitious claims against the estate of the decedent, which have been discharged by him in his lifetime; and also to prevent the allowance of claims against which there existed a legal offset, known only to the party presenting such claim, and which those who are interested in the estate of the decedent may be una-

ble to establish by legal proof." In other words, when his claim is objected to, the executor or administrator must verify it precisely in the same way that he may require any claim presented to him by a claimant to be verified, as provided by 2 *R. S.*, 88, § 35. He must swear that it is due, that no part thereof has been paid, and that there are no offsets against it. Now, the administrator did not thus verify his claim, but he was sworn as a witness in this case on his own behalf, which would not have been permitted at the time the above cases were decided, and was suffered, without objection, to testify concerning this transaction between himself and the deceased ; but although he substantially swears the claim is due, yet nowhere does he testify that the deceased had never paid him anything on account of it, or that there were no offsets against the same. This, if not objected to, and if it were true, he could have done. The reason for the rule is certainly as strong now as it was when Williams *v.* Purdy was decided ; and under the authority of that case, it seems to me to be my duty to reject the claim. It may be said that the contestant had the opportunity of inquiring as to those facts; and that, as she failed to do so, she is concluded. On the contrary, I think there were affirmative facts to be established by the claimant, without proof of which he cannot be permitted to recover.

An effort was made to impeach some of the contestant's witnesses, by showing simply that their moral characters were bad, the witnesses not stating that, in consequence, they would not believe them under oath. While it is not necessary to determine the question as to

the effect of the evidence on that subject, yet, under the authority of Wright *v.* Paige (36 *Barb.*, 438), *in certain cases*, it would be a sufficient impeachment to show, simply, that the moral character was bad. But I apprehend that because a man sometimes worked on Sunday, or was in the habit of getting intoxicated and abusing his wife, these facts alone would not be sufficient to stamp him with that degree of moral turpitude which would warrant the rejection of his evidence. As, however, the disposal of the case does not, according to the views already expressed, depend upon the question of the credibility of those witnesses, no further discussion of the subject is deemed necessary.

It results that the claim of the administrator must be rejected, and that the widow is entitled to her distributive share, in what remains after deducting the expenses of administration, as stated in the account and commissions. Interest must also be charged against the administrator on the $425, which he drew out of the savings bank, at the rate of six per cent., from May 1, 1873, less $208.80, being the amount of debts, funeral expenses, and expenses of administration paid and incurred by him.

As to costs, were they the simple statutory items of the old Court of Common Pleas, I should be inclined to direct so trifling an amount to be paid out of the fund ; but as they may now embrace the considerable charges of the stenographer of the court as a disbursement, I do not think it just that the widow, who has wholly succeeded in the case, should have her small share diminished by the imposition of any part of the burden ; and

as the administrator has entirely failed in the matters in controversy, he must be personally charged with costs.

Ordered accordingly.