---

### *In re* CLAYTON'S ESTATE.

(*Surrogate's Court, New York County.* March 21, 1889.)

1. EXECUTORS AND ADMINISTRATORS—SETTLEMENT—LIMITATION.
     By Code Civil Proc. N. Y. § 2724, a settlement of the account of an administrator may be required one year after grant of letters. Section 414 subjects special proceedings to the same rules of limitation which apply to actions, with certain exceptions. Section 382 requires actions on contract obligations, express or implied, except judgments and sealed instruments, and on liabilities created by statute, except penalties or forfeitures, to be brought within six years. *Held,* that the right to compel an accounting is barred six years after the time when it may be required.

2. SAME—MINORITY OF DISTRIBUTEES.
     Some of the distributees arrived at age within six years. *Held* that, they having been cited, but not having appeared or filed objections, the liability to account was not relieved of the bar of the statute.

3. SAME—WAIVER OF STATUTE.
     An administrator voluntarily filed an account, admitting the receipt of the proceeds of a mortgage, an alleged asset, but alleging that it was done nominally as administrator; that letters were taken to oblige the mortgagor, and perfect his title; and that the administrator individually owned the mortgage; and denying any title in any one else, or liability to account therefor. *Held,* that the statute of limitations was not waived.

4. SAME—PLEADING THE STATUTE.
     Objections were made to the account, which was thereupon referred. *Held,* that a plea of the statute of limitations, interposed in an answer to the objections filed with the referee, was not too late.

5. MORTGAGES—ASSIGNMENT—EVIDENCE—HUSBAND AND WIFE.
     On a conveyance to his wife, a husband assumed a mortgage for $11,000, and afterwards paid it. The property was afterwards sold, and a bond and mortgage for $13,000 for part of the price were given to the wife. The wife afterwards purchased

other property for $10,000, of which the husband paid $9,500. The checks for the interest on the mortgage to the wife were at first made to her, and afterwards to the husband, all of them having been delivered to him. *Held* insufficient evidence of an assignment of the bond and mortgage to the husband.

On exceptions to referee's report.

Accounting by Charles H. Clayton, as administrator of Sarah E. Clayton, deceased. Code Civil Proc. N. Y. § 382, requires "(1) an action on a contract obligation or liability, express or implied, except a judgment or sealed instrument; (2) an action to recover upon a liability created by statute, except a penalty or forfeiture,"—to be brought within six years after the cause of action has accrued.

*Sackett & Bennett*, for administrator.   *Frederick Seymour*, special guardian, for infant contestants.

RANSOM, S.  The above decedent died intestate, July 27, 1869, leaving her surviving her husband, Charles H. Clayton, and six children, one of whom died November 24, 1876, leaving two children, two of the contestants herein through their special guardian. Letters of administration were granted to said Charles H. Clayton on the 19th day of September, 1871. He has never made or filed an inventory of the estate. On May 10, 1886, George D. Cragin, Jr., the husband of the deceased daughter of the intestate, filed his petition to compel said administrator to account, and thereafter, and on the 29th day of September, 1886, the administrator filed the account, to which objections were filed, and on the 29th day of October, 1886, he voluntarily petitioned this court for leave to file his account, which was granted, and his voluntary account was filed December 30, 1886. Subsequently an order was made consolidating the two accounts, and the usual reference ordered. The referee filed his report, to which exceptions have been filed.

The facts are that in 1861 one Matthew Byrnes, for the consideration of $19,000, conveyed to Sarah E. Clayton, the decedent, a house and lot on East Thirty-Fourth street, this city, the consideration being paid as follows: $7,775 in cash, and the balance by the assumption by her husband, the accounting party, of a mortgage of $11,000, he joining in the deed. In 1863 said Charles H. Clayton, with his own money, paid said mortgage. In 1864 this house and lot was sold by the decedent to one Joseph Stiner, for the sum of $25,000, paid as follows: $12,000 in cash to her, and the balance, $13,000, by the bond and mortgage of said Stiner for that amount to her as mortgagee. In January, 1867, she bought certain real estate at Orange, N. J., for the sum of $10,000, paid as follows: $500 at the time the contract of purchase was made; $5,000 at the time the deed was delivered; and $4,500 by the giving of a bond, secured by a mortgage, payable one year after its date, which said bond was the joint and several bond of Charles H. Clayton, her husband, and herself. Said Charles H. Clayton paid said sum of $5,000 cash with his own money, and, when said bond became due and payable, with his own money paid the same, with interest. The testimony shows that the husband of the decedent transacted most of her business, and from October, 1869, up to the payment of the Stiner mortgage, collected the interest thereon, amounting to $2,275, and retained the same to his own use; and in October, 1871, received the principal thereof, amounting to $13,000, and retained the same to his own use, claiming that his wife had assigned and delivered the bond and mortgage to him in consideration of moneys advanced by him for the Orange property. Such assignment was not in writing. Letters of administration were taken out by him in 1871 for the purpose of satisfying said mortgage. He has always claimed to be the absolute owner of all the personal property of decedent. On March 2, 1887, the administrator filed with the referee an answer to the objections filed to his account, thereby interposing the statute of limitations to any claim of the contestants. No assets or property of the

estate were received by him for about 15 years prior to the filing of the petition herein. The questions, as presented by the report and exceptions, are: *First.* At the time of her death, was Sarah E. Clayton the legal owner of the Stiner bond and mortgage? *Second.* Were or are the contestants barred by the statute of limitations, and, if so, has the administrator waived the statute by filing his account? The referee has found that at the time of her death the intestate was the legal owner of the bond and mortgage, and that the contestants are barred by the statute.

Upon the first question the evidence is very meager. The administrator being forbidden to testify as to personal transactions or communications with the deceased, the evidence offered to substantiate his claim, that the Stiner bond and mortgage had been assigned to him, was almost wholly confined to documents,—the checks given to the mortgagee for the interest, and the deed and bond and mortgage. It is true that from 1867 Stiner, the mortgagor, made the checks for the interest payable to the order of Charles H. Clayton, whereas before that time they had been to the order of Sarah E. Clayton, though delivered to her husband. It is also proved that Mr. Clayton advanced the purchase money for the Orange property, which, as the learned referee argues, is only proof of an indebtedness of his wife to him, and not presumptive evidence of a new and independent contract, namely, of a sale and delivery by Mrs. Clayton to him of the Stiner bond and mortgage. These facts of themselves could not be held to establish the assignment claimed, and, considered with what other testimony there is on this point, would not warrant such a finding by the referee.

I now come to the very important question,—are these contestants barred by the statute of limitations? By 2 Rev. St. p. 92, § 52, all parties interested in the estate had an absolute right to demand an account 18 months after letters of administration were granted, and this provision has not been changed by the Code of Civil Procedure. Up to the enactment of the Code the undoubted and well-settled rule on this point was that the statute of limitations began to run as soon as the right to compel an accounting had accrued, namely, 18 months from the time the letters were issued. *Clark* v. *Ford*, 1 Abb. Dec. 359; *McCartee* v. *Camel*, 1 Barb. Ch. 455; *Society* v. *Hebard*, 51 Barb. 552, affirmed, 41 N. Y. 619; *Cole* v. *Terpenning*, 25 Hun, 482; *Clock* v. *Chadeagne*, 10 Hun, 97; *Smith* v. *Remington*, 42 Barb. 75. It will be seen from a study of the above cases that prior to the Code of Civil Procedure, in a proceeding to compel the payment of a legacy or distributive share, there was no statute of limitations which applied in express terms. But by statute the legatee or distributee had a concurrent remedy by action at law, and the rule is undisputed that, where there is a legal as well as an equitable remedy in respect to the same subject-matter, the latter is subject to the same statutory limitation as the former. Since the enactment of the Code conflicting decisions on this point are found. In *Collins* v. *Waydell*, 3 Dem. Sur. 30, the surrogate held that the statute did not commence to run where an action is sought to be brought to compel the payment of a legacy or distributive share until there had been a judicial settlement of the executor's account. In *Wood* v. *Rusco*, 4 Redf. Sur. 380, it was held that the claim of a person entitled to a share in the estate was not barred if presented within six years after the claimant learns of the appointment of an administrator, and the learned surrogate says that, if the petitioner had been in a position to act, namely, had known of the appointment of the administrator, the six years' limitation would have attached.

The contention of the contestants herein, that they are not barred by the statute until six years have elapsed since they learned that letters of administration had been issued, is apparently sustained by high authority. The general term of the Fourth department considered this point at length in the case of *Drake* v. *Wilkie*, 30 Hun, 537, as to the relative points of time. That case

is similar to the one at bar, inasmuch as in that case the plaintiff's right of action was not barred by the statute in force at the time of the adoption of the first part of the Code of Civil Procedure (September 1, 1877.)  It did not fall within any of the exceptions in section 414 thereof, and was thereafter governed by the rules therein prescribed.  In the above case a legatee accepted a sum as payment in full of her legacy,—much less than the amount thereof.  This was in 1872.  In 1881 she was first informed of the true amount of the legacy, and within a few months instituted proceedings to compel the payment of the balance.  The executor interposed the defense of the statute of limitations.  The court held that as 2 Rev. St. p. 114, § 9, giving a right of action for a legacy, and section 1819 of the Code of Civil Procedure which took its place, required a demand for the legacy to be made upon the executor before any action could be brought therefor, the limitation applicable to the cause of action thereby given was prescribed by section 410 of Code, and as the case fell within subdivision 1 of that section, which provides that the time is to be computed only from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends, the statute did not begin to run until 1881.

It is proven beyond a doubt in the case of bar that the contestants did not know that letters of administration had been granted to Mr. Clayton until about five years before the institution of this proceeding.  The case just cited would be controlling, and seem to dispose of the question, were it not for a later decision, which, after a good deal of study, I am of the opinion establishes a different rule.  In *Re Van Dyke*, 44 Hun, 394, the intestate died on the 18th day of August, 1874, and letters of administration were issued to Michael M. Van Dyke on the 15th day of September of the same year.  He died in September, 1885, and the appellant was appointed the administrator *c. t. a.* in October of that year.  The petition for an accounting was presented in September, 1886.  The statute of limitations was interposed as an answer to the petition, but that was overruled by the surrogate, who cited many cases, among which was *Drake* v. *Wilkie, supra*, and the accounting directed.  Justice DANIELS, in the course of his opinion, says: "That the proceeding before the surrogate was a special proceeding is conceded, as it necessarily must be, by each of the contesting parties; and as a special proceeding it was subjected by section 414 of the Code of Civil Procedure to the same rules of limitation as have been made applicable to civil actions, subject to certain exceptions;  * * *  and, having been subjected to these rules of limitation, according to the provisions of section 382 of the same Code the proceedings to enforce an accounting should be commenced within six years after the right to require it shall have accrued."  He says further, in substance, that as by section 2724 of the Code an administrator may be required to submit to a judicial settlement of his accounts after the expiration of one year from the time letters were issued to him, the obligation to account accrues at that time; and under the provisions of section 382 the right to acquire an accounting will be barred after the expiration of six years from the time when the accounting may be ordered, according to section 2724.  The learned justice then discusses section 1819, and determines that it contains no limitation of time within which the administrator may be called to account, and relates simply to the time when an action may be commenced to compel the payment of a distributive share of legacy, viz., when the accounting has taken place.  It will be seen that this case decides that there is a different limitation of time in the two proceedings; that the proceeding for an accounting, governed by sections 382, 414, 2724, must be commenced within six years from the time the right accrued, and the proceeding for the payment of a legacy or distributive share is made dependent upon the accounting.  This case, while not overruling *Drake* v. *Wilkie, supra*, renders it inapplicable to the case at bar.

There remains another question to be considered.  By the filing of the vol-

untary account, did the administrator waive the statute of limitations? By schedule G of his account the administrator admits taking out letters, and admits receiving the proceeds of the Stiner bond and mortgage, but says it was done nominally as administrator, and claims to be the owner of it himself, and says that letters were taken out merely to oblige the mortgagor, and perfect his title, and denies that there is any title in any one else, or that he is liable to account therefor. There is no acknowledgment in his account of this bond and mortgage being an asset of the estate. On the contrary there is a denial that he is under any obligation to account to any one. The exceptions to this finding of the referee are overruled.

The remaining question, of whether the plea of the statute of limitations was put in too late, I decide in the negative. *Smith* v. *Remington*, 42 Barb. 75; *Van Vleck* v. *Burroughs*, 6 Barb. 341; *Clock* v. *Chadeagne*, 10 Hun, 97.

It is claimed by the contestants that as Arthur and Ernest Clayton did not arrive at majority until September, 1880, and November 26, 1883, respectively, the statute has not run against them, and therefore the administrator should account to all parties interested. This position is not tenable, for, though cited, the two parties have never appeared in the proceeding, nor filed objections to the account. The report of the referee is confirmed.