HANNAH LODER, Administratrix, Etc., Appellant and Respondent, *v.* GILBERT J. HATFIELD, et al., Appellants and Respondents.

Where a gift of a legacy is direct and absolute, a subsequent and independent direction for payment on the happening of an event named does not defer the vesting of the legacy, but only postpones the payment, and if the legatee die before the happening of the event, his representatives are entitled to the legacy.

So, also, where a direction for the payment of a legacy at a future day is for the convenience of the estate, or to let in some other interest, the vesting of the gift is not prevented.

The will of H., after a devise of his homestead farm to his son Jonathan, "on the following conditions and proviso," contained among those conditions, the following: "I order and direct my said son Jonathan to pay unto my three daughters — Hannah, Eunice and Sarah — four hundred dollars each, which I give and bequeath to them and their heirs forever." After directing the payment of various other legacies by Jonathan, the will provided that the testator's daughters, above named, should live with Jonathan and their mother, and have their support on the farm, they assisting in carrying it on; and that "the money, above bequeathed them, be paid one year after they shall severally marry or be inclined to leave Jonathan and their mother, and live elsewhere." Jonathan took possession of the farm under the devise. Sarah and Eunice resided with him until their death, neither having married. *Held*, that said legacies were charged upon the lands devised to Jonathan; also, that the legacies were not contingent upon the happening of one or the other of the events specified, but vested on the death of the testator.

Sarah died more than sixteen years before the commencement of this action; the statute of limitations was pleaded as a bar to a recovery of the legacy to her. *Held*, that the cause of action accrued one year after her death; that Jonathan, by accepting the devise, became personally liable for the payment of the legacies; that the case, therefore, was not one exclusively of equitable cognizance, and the same law of limitation applied as if the action was a legal one; that the case came either

within the six years' limitation prescribed by section 91, or the ten years' limitation prescribed by section 97 of the Code ; and that the cause of action was barred.

An action to enforce payment of a legacy is not an action upon a sealed instrument within the meaning of the twenty years' limitation. (§ 90, sub. 2.)

As to whether the rule formerly prevailing in equity, by which no statute of limitations was applicable to suits in equity for certain causes of action, still exists under the Code, *quære.*

Also, *held,* that interest was properly charged upon the legacy to Eunice, commencing one year after her death.

(Argued October 4, 1877 ; decided November 13, 1877.)

THESE were cross-appeals from a judgment of the General Term of the Supreme Court, in the first judicial department, affirming in part and reversing in part, a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 4 Hun, 36.)

This action was brought by plaintiff as administratrix of the estate of Eunice Hatfield, deceased, to enforce the payment of two legacies, alleged to be chargeable on certain real estate devised to Jonathan Hatfield, and held by defendants as his devisees. Defendants pleaded, among other things, the statute of limitations as to one of the legacies.

Joshua Hatfield, the father of said Jonathan, died August 7, 1821, leaving a will, the material portion of which is as follows :

" First. I order and direct my funeral charges, and all my lawful debts to be first paid out of my estate, by my executors; and to enable them to do so, I order and direct that my said executors do sell the seventy-one acres of land I own of the farm I purchased of Govre Storms, and I hereby give them a discretional power as to the time of selling it; and as it may be necessary to raise the money to meet any debts before the land I have above directed can be sold, I do hereby empower and authorize my son Jonathan, one of my executors, and my wife, an executrix of this will, to mortgage all my real estate as fully as I myself might or could, if, in their opinion, it shall· be necessary to raise the money to

settle my said debts, so as my property may not be sacrificed. I give and devise unto my son, Joshua Hatfield, all my farm or homestead whereon I now live, together with all the lands I own, which I purchased of John Lee, and to his heirs and assigns forever, on the following conditions and proviso :

"First. That he pay to my wife five hundred dollars in three years after my decease; and that my said wife retain her right of dower in my homestead farm, but no other of my lands; and I order and direct and give to my said wife a room in my dwelling-house such as she may choose to live in. I order and direct my said son Jonathan to pay unto my three daughters — Hannah, Eunice and Sarah — four hundred dollars each, which I give and bequeath to them and their heirs forever. I also order and direct my said son Jonathan to pay to my daughter Martha, wife of Nathaniel Fowler, one hundred and twenty-five dollars in two years after my decease; and I also order and direct my said son Jonathan to pay to my daughter, Phebe Combs, two hundred dollars.

And, furthermore, I order and direct that my four daughters — Phebe, Hannah, Eunice and Sarah — shall live with Jonathan and their mother, and to have a support of the farm, and to assist as usually they have done in carrying on the business in the house, and the money I have above bequeathed them to be paid in one year after they shall severally marry, or be inclined to leave Jonathan and their mother and live elsewhere. The household furniture, excepting one good bed for Jonathan, I give and bequeath to my wife, and to my three daughters — Hannah, Eunice and Sarah — to be equally divided among them. All my stock of cattle, and all my farming utensils, I order and direct shall be kept on the farm, and to be for the use and benefit of my family; and any part of them that my son Jonathan and my wife may think proper and necessary to be sold, I hereby authorize them so to do, for to assist in the discharge of my debts. All the stock of cattle and farming utensils that may be on the farm at the time of the marriage, or at the

decease of my wife, I hereby give and bequeath unto my said son Jonathan, and to his heirs forever.

"The small piece of land I own in North Castle, I direct my executors also to sell, and to apply the proceeds to the payment of my debts. In order, furthermore, to provide for my wife, I hereby give and bequeath to her, and in her own right, and to be at her own disposal, three good milch cows, one horse, such as she may choose to be kept on the farm, as the other stock, and the one-horse wagon.

"Although I have willed above my homestead farm to my son Jonathan, in fee simple, on the conditions and proviso above mentioned, it is my will, and I do direct that the said homestead farm shall not be sold by Jonathan, nor his present right or interest therein, or any part thereof, during the natural life of my wife."

The court found the following facts, among others: Jonathan Hatfield accepted the farm so devised, entered into possession thereof, and occupied it until his death in January, 1870. He left a will, by which he devised the farm to defendants. The testator's daughters, Sarah and Eunice, each remained at home, living on the farm and aiding in household affairs, until her death. Neither of them married, and no part of the legacies to them were ever paid. Sarah died May 8th, 1866 (so stated in record; 1856, doubtless, intended; see opinion); Eunice died August 19, 1871. Sarah, by a written instrument, executed in December, 1855, transferred and assigned her legacy to Eunice, who died intestate.

The court found, as matter of law, that the legacies to testator's daughters, Sarah and Eunice, were, by the will, charged upon the farm so devised to Jonathan; that said legacies vested in the legatees at the death of their father, and passed to their representatives; and that plaintiff was entitled to have them paid out of said real estate, with interest on each legacy from one year after the death of the legatee; and entered judgment accordingly, and directed sale of the farm to pay the same.

The General Term affirmed the judgment as to the legacy given to Eunice Hatfield, and reversed it as to the legacy given to Sarah Hatfield. Both parties appealed to this court.

*Close & Robertson*, for appellants. A legacy payable at a future time out of real estate does not vest before the time appointed for payment, unless a contrary intention appears, except when it is postponed for the convenience of the estate, and not for reasons personal to the legatee. (Hawkins on Wills [Am. Notes, 233–235, note 1]; Wil. Eq. Jur., 519.) The payment of the legacies in this case was postponed for reasons personal to the legatees. (*Sweet* v. *Chase*, 2 N. Y. 73, 80; *Harris* v. *Fly*, 7 Paige, 429.) Legacies will not carry interest until they are payable. (Dayton on Surrogates, 466.) The legacy to Sarah was barred by the statute of limitations. (3 Barb. Ch., 199; 15 N. Y., 505.)

*Edward Wells*, for respondent. The legacies to Sarah and Eunice vested in them on the death of the testator. (*Sowther* v. *Condon*, 2 Atk., 132 ; *Ennis* v. *Hancock*, id., 507–509; *Birdsall* v. *Hewlett*, 1 Paige, 32; *Marsh* v. *Wheeler*, 2 Edw. Ch., 156; *Harris* v. *Fly*, 7 Paige, 421, 430; *Sweet* v. *Chase*, 2 N. Y., 73; *Terrell* v. *Pub. Admr.*, 4 Bradf., 245; *Ennis* v. *Pents*, 3 id., 384; Ram. on Assets, 128; *Godwin* v. *Mundy*, 1 Br. Ch., 191; Talbot's Cases [by Forrester], 117; *Sherman* v. *Collins*, 3 Atk., 319, 321.) These legacies were a charge on the farm in equity. (2 Wil. Eq. Jur., 489, 490 ; *Birdsall* v. *Hewlett*, 1 Paige, 32; *Gardner* v. *Gardner*, 3 Mason, 178; *Sands* v. *Champlin*, 1 Story C. C., 376; *Harris* v. *Fly*, 7 Paige, 421, 425; *Kelsey* v. *Western*, 2 N. Y., 500, 507.) Neither of the legacies were barred by the statute of limitations. (1 Roper on Legacies, 926, 927; *Kane* v. *Bloodgood.* 7 J. Ch., 116.) This is an action in equity to foreclose a lien created by a sealed instrument. (Code, § 90. sub. 2.) Interest was recoverable on the legacies from one year after the death of the legatees. (*Glen* v. *Fisher*, 6 J. Ch., 33, 35; *Birdsall* v. *Hewlett*, 1 Paige 32, 35; *Harris* v. *Fly*, 7 Paige, 421; Wil. Eq., 489.)

Folger, J. The legacies in question in this case are charged upon the lands devised to the testator of the defendants. The devise of the lands was expressly upon certain "*conditions and proviso ;*" and it is again stated in the will, that the devise of the homestead farm to the son Jonathan was on "*conditions and proviso* before mentioned." It is plain that within these conditions and proviso fall the legacies to the several daughters of the testator, among which are those now in controversy. A devise of land to one, on condition that he pay the legacies given by the will, make them a charge thereon in equity (*Birdsall* v. *Hewlett*, 1 Paige 32 ; *Harris* v. *Fly*, 7 id., 421), unless there is something in the will to show a different intention (7 id., *supra*), which is not the case here. Though by accepting the devise, the devisee became personally liable for the payment of the legacies, yet the lands devised remained in equity as security for the payment. (*Kelsey* v. *Western*, 2 N. Y., 500, 508.)

The question whether those legacies vested in the legatees, in their life-time, is not so easily disposed of. There are some considerations arising out of the provisions of the will, and the circumstances in which the legatees were placed by it, which tend to show that the legacies did not vest. Thus it is plain that it was the intent of the will that the daughters of the testator, to whom these legacies were given, should remain upon the homestead farm, which was devised to the son, receiving their maintenance from it and yielding their services in carrying it on. The time of payment fixed for the legacies was after this situation of the legatees should have ceased. The legacies are made payable after marriage of the legatees, or after an inclination made known by them to leave the homestead. It is quite plausible to say, looking alone at this provision of the will, and excluding from consideration the rules of decision which have been established, and which are brought into operation by other provisions of the will, and by other circumstances; it is quite plausible to say that the intention of the testator was, that the legacies should not vest at once upon his death, but should be con-

tingent upon the happening of one or the other of those events. Neither of these has happened. And so it is quite plausible also to say, that neither of these legatees have come into the condition which was first to take place before payment could be made or demanded, and that the successors of those legatees are not entitled to have payment of the legacies. But there are other parts of the will, and other circumstances of the case, which evoke the rules above spoken of, and which have brought us to the conclusion that these legacies vested at once in the legatees named upon the death of the testator. It is a general rule, that a postponement of the time of payment will not, of itself, make a legacy contingent, unless it be annexed to the substance of the gift; or, as it is sometimes put, unless it be upon an event of such a nature that it is to be presumed that the testator meant to make no gift unless that event happened. Now, in looking into the will in this case, two things are quite plain: that, so far as the collocation of the words of gift, and the words of time of payment are concerned, they are quite distinct; and that the words of gift are direct, emphatic and absolute. Hence we may gather the intent, as being to make an absolute and present vested gift, and to defer to the future only the time of payment. The form of words in which the gift is made, is this: "I order and direct my son Jonathan to pay unto my three daughters— Hannah, Eunice and Sarah— four hundred dollars each, which I give and bequeath to them and their heirs forever." This clause of gift stands alone, so far as the clause of time of payment is concerned; alone and disconnected from the latter, both in sense and the necessities of grammar. Nor is it unworthy of notice, that the contrary is the case with all the other legacies, save one, given by the will; and that as to them, it does immediately accompany the words of gift with the direction as to the time of payment. And the other one thus excepted, is in the same category with those in question in this case. Certainly, the idea conveyed by the terms of the gift, as above stated, is of an absolute, sure and lasting bequest, to belong

at once and forever to the legatees named, or to those coming after them in legal succession; while the severance of the clause of bequest from the clause of time of payment repels, rather than supports, the notion that more than the time of payment was meant to be contingent. The gift is direct to the legatees and their heirs, and independent of the direction when to pay. In such case the rule is, that the direction for payment, on the happening of an event named, shall not defer the vesting of the legacy. (*In re* Bartholomew, 1 McN. & Gordon, 345; *Leiter* v. *Bradley*, 1 Hare, 12, 13; see, also, *Andrew* v. *N. Y. Bible and Prayer Book Society*, 4 Sandf. [S. C.], 156, 173; *Patterson* v. *Ellis*, 11 Wend., 259.) The gift is contained in the words alone: "unto my three daughters—Hannah, Eunice and Sarah—four hundred dollars each, which I give and bequeath to them and their heirs forever." It is not unto those of my three daughters who shall marry, or who shall feel inclined to leave the farm; nor is it even, "when," or "if" either of those things take place. The objects of the gift are made distinct by the relation of the donees to the testator, and by their given names. It is the time of payment only that needs to refer for certainty to the event of marriage or leaving home. The gift being, then, direct and distinct, the rule above quoted comes into play.

The words of the will, by which the gift is not alone to the daughters, but "to them and their heirs forever," are entitled to weight. They show that the testator had in mind a permanent separation from the bulk of his estate of the amount of these legacies, and a transmission of it in a different course of succession. In a like case, *Lowther* v. *Condon* (2 Atk., 130, 132), Lord HARDWICKE said he might, and "ought, to lay hold of a strong reasoning to be drawn from the words executors, administrators or assigns." And it is to be observed of them, that they are nearly the same form of words which the testator uses in making the gift and devise to his son Jonathan of the homestead and other lands. There is no doubt but he meant to give him an absolute fee,

and to vest him at once with the title, charged with the payment of the legacies.

It is another rule, that if the direction to pay at a future period be for the convenience of the estate, or to let in some other interest, the vesting of the gift is not prevented. (*Packham* v. *Gregory*, 4 Hare, 398.) That such was the purpose in this case is shown by several things. All the legacies given by the will are postponed in payment; that to the widow of the testator, for three years after his decease; that to the daughter Martha, for two years after his decease; though it is to be inferred (from the fact stated in the will that she was the wife of Nathaniel Fowler), that she was living away from the homestead, having her own separate household and affairs; hence the sooner the payment, the more to her convenience and advantage. Again, the devisee of the homestead is restrained for a time from selling it. It does not appear that the other lands devised were of great or little value. It is not a weak presumption, that the devisee would need to make from the working of the homestead the money with which to pay any and all of the legacies. For it is evident, from the provisions of the will, that the personal estate left was inconsiderable, inasmuch as there is direction and power to sell lands and chattels whereform to pay debts.. Hence the time given for the payment of the legacies, was time given to raise the means from the tillage of the lands devised; and this was for the convenience of the estate, or what is here equivalent for the ease of the devisee. Again, these legacies are not payable to these legatees at once on marriage or leaving home, but not until one year after; clearly a provision not for the convenience or profit of the legatees, but for the ease of the devisee. It is to be noticed, too, that the legacy to these daughters is not all which their father gave to them. All of the household furniture, save one article, he gave to their mother, and to them in equal shares. To this bequest no postponement is attached. It was not needful to attach it for the ease of the devisee, for the gift of it put upon him no burthen. But if

their marriage or leaving home was a controlling considera-
tion with the testator, and led him to affix postponement as
a contingency to the pecuniary gift, why did it not to the
gift of chattels? As by the will a home was provided for
them upon the farm, they no more needed those chattels
before they were married or left home than they needed the
money. Hence it would seem that the postponement of the
payment of it did not arise from a consideration of their con-
dition and circumstances, so much as from the needs of their
brother, the devisee of the lands charged with payment of
the legacies. There are other things in the will tending to
the same end, though not of so much importance, perhaps.
Thus all the cattle and utensils are to be kept on the farm,
for the use and benefit of the family; but, on the marriage
or death of the widow, are given absolutely to the son.
And though the homestead is given absolutely to the son, he
is restricted from selling it during the natural life of the
widow, yielding the strong implication that upon her death
he might sell; which implication is sustained by the language
of the direction for the daughters to remain on the farm,
have their support there, and assist in the affairs of it. That
direction is that they shall live there with Jonathan and their
mother. The time of payment of their legacies is their mar-
riage, or their being inclined to leave Jonathan and their
mother, and live elsewhere. Evidently the contemplation
of the testator was not to enforce the keeping up of the same
family arrangement after the death of his widow. But all
considerations to arise out of the celibate state of the daugh-
ters, or their disinclination to leave the homestead, would
still exist. Then, again, it seems that the circumstances of
their personal condition or wishes were not those which were
predominant and controlling in the provisions of the will for
the time of payment of the legacies. After the death of the
widow the son could sell the farm. The daughters, though
not married, and though not inclined to leave it, would not
be able in such case to remain upon it and receive their sup-
port from it. Yet, technically, neither event upon which

it is claimed that payment was predicated would have happened. But would they have been debarred from asking for their legacies? It may be doubtful, too, whether after the death of the widow, they could insist upon remaining upon the farm with the son alone. If he should have refused them the privilege, would they have been barred their legacies, though unmarried and disinclined to leave? It is quite plain that the postponement of time of payment was, in great measure, if not entirely, for the convenience of the estate and of the devisee of it. This not only brings into effect the rule last named, but stands in the way of that of another rule, which at times is applied in some cases of this class. That rule is, that when the payment of a legacy is charged upon lands, if the legatee dies before the time for payment arrives, the legacy sinks into the land for the benefit of the heir-at-law or devisee, unless a contrary intention appear from the will. (*Duke of Chandor* v. *Talbot*, 2 P. Wms., 601, and cases in notes to Cox's ed.) This rule is general, but not universal; and when the postponement is for the ease of the estate or the benefit of the devisee, it does not apply (*Remnant* v. *Hood*, 2 DeG. F. & Jones, 410); or, if it appear that there was an intention that the legacy should vest at an earlier period. (*Stone* v. *Massy*, 2 Yeates, 363; 1 Paige, 7 Paige, both *supra*.)

Another question arising in the case is, whether the statute of limitations is a bar to a recovery for the legacy to the daughter Sarah. It is not contended, that there is any period prescribed by law for the commencement of the action, shorter than six years after the cause of it accrued. The question might then be disposed of, in strictness, upon the facts. The finding of the court is, that Sarah died in 1866, May 8th. The cause of action accrued in one year thereafter, or May 8th, 1867, and not until then. It is not found when the action was commenced, nor is there any proof, nor any concession by the plaintiff of the date, though the opinion at General Term states it to have been 15th May, 1873. It does not appear upon what

that statement is based. The summons is dated March 10, 1873, and the complaint is verified 1st March, 1873. So that, in strictness, the facts are not here to found this point of the defendants. But we believe that the year of Sarah's death, given in the findings of the court, as they are printed in the appeal book, is a clerical or typical error. It is averred in the complaint (inferentially), that she died on the 8th May, 1856; and is so admitted in the answer, and so treated in the opinion at General Term; and in the points of both parties in this court, the point is considered as having a basis in the facts of the case. We will then assume, that at least sixteen years elapsed from the time the cause of action accrued for the legacy of Sarah, until the commencement of this action. The answer sets up the six-year statute, and no other. The plaintiff contends that the defendant cannot now avail of the ten-year statute. But, as the point does not seem to have been made below, where amendments of pleadings in such case are easily granted, and are to be commended, we will not here sustain this objection; even if it be necessary for the defendants to rest alone upon the ten-year statute. It is further claimed on behalf of the plaintiff that these legacies are a charge upon real estate, and that "it is a general rule in the books, that there is no statute of limitations to a charge on real estate." (*Kane* v. *Bloodgood,* 7 J. C. R., 90–116.) This remark from that case is there limited, however, to cases in which equity has the proper and exclusive cognizance. By entering into possession of the lands devised, upon condition of payment of these legacies, and thus accepting the benefit of the devise, the devisee became personally liable for the payment of the legacies. An action at law might have been maintained against him therefor, if the cause of action had accrued before his death; or against his executors after his death. (*Dodge* v. *Manning,* 11 Paige, 347; S. C., 1 N. Y., 298.) So, that equity had not exclusive cognizance of the demand. In such case, the same law of limitation of actions applies in both courts. (*Borst* v. *Corey,* 15 N. Y., 505–510, and cases there cited; see, also,

*Rundle* v. *Allison*, 34 id., 180; *Am. Bible Soc.* v. *Hebard*, 51 Barb., 552, affirmed in this court; 41 N. Y., 619 [notes of cases affirmed, reversed, etc.].) In *Souzer* v. *De Meyer* (2 Paige, 574, 577), the learned Chancellor reserves the question as if in doubt, and I do not find that he ever solved the doubt; but the cases above cited seem to settle it. Besides, it is now worthy of consideration, that the distinction in actions and jurisdiction of causes of action, is abolished; and that one court entertains all. (Code, § 69.) Now that the Code (§ 74) prescribes a rule of limitation for all civil actions, it is questionable whether the rules formerly prevailing in equity, by which no statute of limitation was applicable to suits in equity for certain causes of action, may make head against a positive and comprehensive statute. This question is briefly spoken to in *De Pierres* v. *Thorn* (4 Bos., 266, 288, 289). It is also claimed that this is an action upon a sealed instrument, and that there is no limitation upon it shorter than twenty years. (Code, § 99, sub. 2.) This point was made in *Am. Bible Society* v. *Hebard, supra,* but was not sustained. (See, also, *Borst* v. *Corey, supra.*) This action does not fall within either of the specifications of the third chapter of the Code. It is either within the 91st or the 97th section. The time is six years or ten years; we need not say which, for either is fatal. So, there was no existing right of action for the legacy to Sarah.

Another question is, whether interest upon the legacy to Eunice is recoverable. It seems to be a general rule, that where land is devised on condition that a legacy be paid by the devisee, it must be paid with interest. (*Glenn* v. *Fisher,* 6 J. C. R., 33.) The reason furnished is, that as the land yields rents and profits to the devisee, he shall yield interest to the legatee; (*Maxwell* v. *Wettenhall,* 2 P. Wms., 26). Though this reason, it is said in Sumner's note to *Hutcheon* v. *Mannington* (1 Vesey, Jr., 368), "is not, perhaps, the true one;" yet, no other is suggested; and so says *Pearson* v. *Pearson* (1 Sch. & Lefroy, 10), with the same omission. The rule seems to be well established, and the reason

seems a good one in this case. The devise of lands to the son, on the condition of payment to a daughter of so much money, was in the nature of exacting so much as a price or consideration for the lands, for which money and the use of it, an equivalent was to be had in the lands and the use of them. Inasmuch, as in the case before us, interest has only been allowed from a year after the death of the legatee, it is entirely equitable that the lands or the devisees thereof, who have had the rents and profits, should be charged with interest. Besides, in one year from the death of the legatee, her representatives became entitled to payment. Payment not having been made, but refused, it is according to all analogies that interest should be charged for withholding it. Some cases go so far as to say, that a legacy charged upon land must have interest from the death of the testator, or not at all; 1 Sch. & Lef. (*supra*.) And it is a general rule, that when a fixed time of payment has arrived interest begins to run, though a demand of payment has not been made. (*Palmer* v. *Trevor*, 1 Verm., 261; *Snell* v. *Dee*, 2 Salk., 415.) The defendants have mistaken the foundation for the allowance of interest, in supposing that it was put upon the ground of a maintenance of the legatee during minority or celibacy.

For these reasons, we think that the judgment appealed from should be affirmed.

As both parties took an appeal, neither should have costs in this court.

All concur, except CHURCH, Ch. J., dissenting. ALLEN, J., not voting; RAPALLO, J., absent.

Judgment affirmed.