ORANGE COUNTY. — HON. R. C. COLEMAN, SURROGATE.—October, 1884.

HULSE v. REEVS.*

*In the matter of the estate of* JESSE S. HULSE, *deceased.*

Testator, who died in 1844, by his will, directed his executors to sell his real property, place the proceeds at interest, and dispose of the same as follows: his widow, S., to have them during her natural life; if she

---

* Surrogate's decree affirmed at Brooklyn Gen. Term, February, 1885.

should have heirs of his body, they to be supported and educated out of the fund, and, at majority, to have one half thereof, and, at the death of S., the remainder; if, at the death of S., there should be no heirs of his body living, the proceeds to go in equal shares to two nephews, N. and C. There was a posthumous son of testator, H., who died after attaining majority and before S. N. died after testator, and before H. The net proceeds of the sale of the real property, viz.: $3,000, were retained by the widow, who died in April, 1884. Upon an application to compel the distribution of a portion of the proceeds,— *Held,*

1. That the will effected an equitable conversion of the real into personal property.
2. That the taking by H. was not absolute but dependent on his surviving the death of S.; and was, therefore, defeated by the happening of a condition subsequent.
3. That N.'s legacy lapsed by his dying before S., and that, therefore, as to one half of the fund in question, decedent died intestate.
4. That the other half was payable to C.

JESSE S. HULSE died May 15th, 1884, leaving a will which was admitted to probate August 20th of the same year, and contained the following provisions: "I give and bequeath unto my beloved wife, Sarah J. Hulse, all my personal property for her own benefit. . . . . . I further direct that the executors to this will may at their discretion and they are hereby empowered to dispose of the farm on which the tavern and store house is situated; also the house, lot and tannery adjoining; also a lot of 13 acres known as the Neely lot, all situated in Smith village, town of Minnisink, county of Orange—the proceeds to be placed at interest and disposed of as follows, viz. :

My beloved wife, Sarah J., to have the proceeds during her natural life. If she should have heirs of my body, they to be supported and educated out of it, and at the age of twenty-one years to have one half of the property, and at the death of the said Sarah

J., the remainder. And I further direct that if at the death of my wife, Sarah J., there should be no heirs of my body living that I bequeath the proceeds of the real estate to Nathan E. Hulse and Charles S. Hulse (equally), sons of my brother, Silas Hulse." The will appointed the widow executrix, and Benjamin Horton and John E. DuBois, executors thereof.

On June 13th, 1844, Sarah J. Hulse, the widow, gave birth to a son, the child of the decedent, named Smith Hulse. There were no other children. Smith Hulse died June 21st, 1865, leaving his mother his sole heir at law and next of kin. Nathan E. died July 17th, 1864. The executors and executrix of the will of Jesse procured a judicial settlement of their account by a decree of the Surrogate's court of Orange county, made February 7th, 1866, whereby it appeared that the sum of $3,000 remained, as the net proceeds of the sale of the real property mentioned in the will. Of this sum, that decree directed $750 to be paid to Charles S. Hulse at the death of Sarah, and authorized Sarah to retain the balance, to her own use. She, in fact, retained also, as executrix, the $750 referred to. Charles S. was a party to the settlement. Nathan E. was not represented. No appeal was taken from the decree. Sarah died April 29th, 1884.

The present special proceeding was instituted by Charles S. Hulse, the administrator of the estate of Nathan, to compel Floyd H. Reevs, the administrator of the estate of Sarah, to pay over to the surviving executor of the will of Jesse one quarter of said $3,000, as the share of Nathan, in said proceeds, and

to compel said executor to pay over the same to the petitioner.

NAUNY & MEAD, *for petitioner.*

B. R. CHAMPION, *for respondent.*

H. A. WADSWORTH, *for executrix of Jesse S. Hulse.*

THE SURROGATE.—The first thing to be determined is whether the fund is to be treated as real or personal property. It was derived from sales of real estate, made in pursuance of the provisions of the will. The real estate was not devised to the executors, nor was the legal title vested in them by operation of law; it, therefore, descended to the heirs at law, subject, however, to the power of sale, which, when executed, divested the legal title of the heirs, and the purchase money became assets in the hands of the executors. The object of the testator to have his real estate converted into money is obvious, for the only disposition made by him of this part of his estate is a disposition of the proceeds. The conversion was directed for the convenience of division, and those to whom it is given take an interest in the money and not in the land. These principles are well settled, and the fund must be regarded as personal estate, whoever may be entitled to it.

I next proceed to consider the nature of the interest which the son, Smith Hulse, took under the will. The following is the provision of the will: "The proceeds to be placed at interest and disposed of as follows: My beloved wife, Sarah J., to have the proceeds during her natural life. If she should have

heirs of my body, they to be supported and educated out of it, and, at the age of twenty-one years, to have one half of the property, and, at the death of the said Sarah J., the remainder; and I further direct that if, at the death of my wife, Sarah J., there should be no heirs of my body living, that (so, in original) I bequeath the proceeds of the real estate to Nathan Emmet Hulse and Charles S. Hulse (equally), sons of my brother, Silas Hulse."

There are here several provisions for different people, connected together both grammatically and in sense, which have to be considered separately, but construed in connection with each other. So much of it as relates to the time of payment to the heirs of his body, when taken alone, is of such a character that the testator's intention cannot to a certainty be known, as to whether he intended to vest the legacy in them before the times mentioned; but the words, "*at* the age," and "*at* the death," the courts have held, bring the gift within the class of cases where time is essential to the vesting of the legacy. Where, however, a contrary intention is indicated by other parts of the will, effect will be given to such intention. This part, as to time, when taken in connection with the preceding part of the sentence, shows to my mind that the testator meant to make the having of heirs of his body the essential condition of the gift to such heirs, the payment only being deferred till the times indicated. This view is strengthened when we allow the force which is given by the courts to the further provision for their support and education (Paterson v. Ellis, 11 *Wend.*, 259; Weyman v.

Ringold, 1 *Bradf.*, 42). In this view of the case, if there were no other provisions of the will to be considered, the legacy to the heirs of his body, on the birth of the son, related back to the death of the testator, and vested at that time in the son, payment of one half being deferred until he arrived at twenty-one years of age, and of the other half until the death of his mother.

There is, however, a further provision of the will to be considered, and its proper effect to be given it, which is: " that, if, at the death of my wife, Sarah J., there should be no heirs of my body living, *that* (to be read as *then*) I give and bequeath the proceeds of the real estate," etc. This was intended, either as a provision for the disposition of these proceeds in the event of his wife's death, never having had heirs of his body, or, having had heirs, to impose a condition upon the gift to such heirs after they had come into existence, and as well to dispose of the same in that event. The first can hardly have been intended, for the expression is: " if there should be no heirs of my body *living*," which, while it might include either situation,—that there had been heirs, who had died, or that there never had been any,—more properly implies the fact that there had been such heirs. I, therefore, conclude that this provision relates to, and imposes a condition upon, the gift to the testator's heirs, and that the taking by them should not be absolute but dependent upon the event of being living at the death of testator's wife, and thus belonged " to that fluctuating class of devises which are liable to be defeated by the occurrence of

some subsequent event (Delavergne v. Dean, 45 *How. Pr.*, 206).

The son lived to take the one half given him on arriving at the age of twenty-one years, but died before his mother, and thereby this last clause became operative. This brings us to the consideration of the nature of the interest given by this last clause to the nephews. As I have shown, if the son had survived his mother, he would have taken absolutely, and the nephews would have had no interest in the estate. The gift to the nephews, therefore, depended upon a condition precedent, *i. e.*, the death of the heirs of the body of the testator before his widow. Nathan survived the testator, but died before the happening of the contingency upon which his interest depended. Did the gift to him thereby lapse? Usually a lapse occurs by reason of the death of the legatee before the death of the testator; but, as Vice Chancellor McCoun says, in Marsh v. Wheeler (2 *Edw.*, *Ch.* 162), "still, there are cases of a lapse when the party interested dies after the testator, provided it happened before the legacy is payable; and yet, to have this effect, it must clearly appear that the time of payment is made the substance of the gift, and that the testator meant the time of payment to be the period when the legacy should vest; and, in such a case, if the legatee die before the time arrives, although after the testator's decease, the legacy necessarily fails." And, as stated by Chief Judge Folger, in Loder v. Hatfield (71 *N. Y.*, 98), "it is a general rule that the postponement of the time of payment will not, of itself, make a legacy contingent,

unless it be annexed to the substance of the gift; or, as it is sometimes put, unless it be upon an event of such a nature that it is to be presumed that the testator meant to make no gift unless that event happened" (*Redf. Surr. Prac.*, 575; Orph. As. v. Emmons; 3 *Bradf.*, 148; Williams v. Seaman, 3 *Redf.*, 148).

There can be no question but that the testator intended that there should be no gift to the nephews, unless his wife died without heirs of his body living. The gift was to the nephews as tenants in common, to them equally. There was, therefore, no survivorship; but the share of Nathan, by reason of his death before the widow, lapsed; and, as there is no disposition made by the will, it passed to the next of kin of the testator, his son and widow, and not to the representatives of the deceased Nathan. Charles, being living, is entitled to an equal half of the fund, which the administrator of the estate of Mrs. Hulse is willing to pay him.

The administrator of Nathan Emmet Hulse, deceased, having no interest in the fund, his proceedings are dismissed.