ANN SNELL, Appellant, *v.* ABRAHAM TUTTLE and Others, Respondents.

*When the title to a legacy, to be paid out of the proceeds of sale of land to be sold on the death of a tenant for life, vests in the legatee on the death of the testator — when a devise of land will be satisfied by a conveyance of a part thereof by the testator to the devisee in consideration of his agreement to receive it in satisfaction of his claim as heir.*

Willard Cotton left a will by which, after devising to his son, Hamilton, a tract of land therein described, he gave, bequeathed and devised to his wife, Eliza, all the residue of his real estate, consisting of about fifty acres, known as his homestead farm, and also the undivided equal one-half part of about twenty-four acres of land, jointly owned by the testator and his son-in-law, Elijah French, to have and enjoy the occupancy of the said described premises, and the use and occupancy of all his personal estate, during her natural life. On the decease of his wife his executors were directed to sell and dispose of all of his real estate, and the avails of such sales, together with the avails of his personal estate, after paying and discharging all the provisions made by the will, were given and bequeathed to his "daughters, Eliza Tuke, Clarissa C. French and Ann Snell, to be divided equally between them, share and share alike," and in case any one or either of his said daughters should "die in his life-time, leaving issue or descendants, he directed that her share should not lapse but should be paid to her child or children." Power to sell the whole or any part of the real estate, before the decease of the testator's wife, was given to the executors upon the condition that his wife should give her consent in writing. By a codicil to the will the daughter, Clarissa French, was given the right to use and occupy the homestead farm during the term of her natural life, provided she paid certain sums, annually, to her sisters, and complied with other terms and conditions prescribed in the codicil.

September 1, 1874, Willard Cotton died, leaving him surviving his widow, Eliza, and a son, his three daughters, Ann, Clarissa and Eliza, and two grandchildren. The widow occupied the homestead until March 30, 1880, when she died, after which event Clarissa occupied it until 1885, complying with all the conditions of the codicil until October, 1880, when Eliza Tuke died, leaving a will by which she bequeathed all of her estate to Clarissa.

*Held,* that, under the testator's will, the interests of the three sisters in the fifty acres vested at the testator's death, and that Clarissa, under the will of her sister Eliza, acquired a two-thirds interest therein.

On April 9, 1874, the said Willard Cotton and his wife, and the said Elijah French and Clarissa C., his wife, conveyed to Ann Snell three-fourths of an acre out of the aforesaid twenty-four acres by a deed reciting a consideration of $1,000, which stated that the consideration of the deed was "five hundred dollars, a gift of the parties of the first part, and the other five hundred dollars, the arrangement of the party of the second part, to relinquish all her right,

title and interest, prospective as heir-at-law of Willard Cotton and wife, in the twenty-four acres, of which said three-fourths acre is a part, so that the twenty-four acres shall be free and clear of her claim, as heir, as aforesaid." On the same day Ann Snell executed an instrument, under seal, by which she acknowledged the receipt of the aforesaid conveyance, and that the same was in release and satisfaction of all her present and prospective interest in said twenty-four acres, as heir-at-law of said Willard Cotton.

*Held*, that by executing the said deed and release the plaintiff, Ann Snell, satisfied and discharged the interest in the twenty-four acres devised to her by her father.

*Burnham* v. *Comfort* (37 Hun, 216) distinguished.

APPEAL from a judgment, entered in Madison County upon the trial of this action by the court at Special Term.

*R. J. Fish*, for the appellant.

*John E. Smith*, for the respondents.

FOLLETT, J.:

APPEAL from a judgment entered upon the decision of a Special Term, construing two wills.

The rights of these parties being dependent upon the intent of the testators, as expressed in their wills and codicils, it is important that the language of these instruments should be constantly borne in mind. It will be most convenient to first consider the will and codicil of Willard Cotton, which provides:

"*First.* I direct that my funeral charges, the expense of administrating my estate and all my debts be paid out of my personal estate.

"*Second.* I give and devise to my son, Hamilton Cotton, his heirs and assigns, all that tract or parcel of land of about five acres, more or less, of lot No. 6, North Mile Strip, situate in the town of Sullivan, Madison county, New York, together with all the hereditaments and appurtenances thereto belonging, to have and to hold the said premises to said Hamilton Cotton, his heirs and assigns forever. I also direct that my executor, hereinafter named, pay to my said son, Hamilton Cotton, one hundred dollars, all of which, together with the advance I have heretofore made to him, will make him to have received an equitable share of my estate. Said $100 to be paid on the decease of my wife.

"*Third.* I give, bequeath and devise to my beloved wife, Eliza Cotton, all of the residue of my real estate, consisting of about fifty

acres, known as my homestead farm on Oak Hill, in said town of Lenox aforesaid, also the undivided equal one-half of about twenty-four acres of land situated in the village of Canastota, in said town of Lenox, aforesaid, jointly owned by me and my son-in law, Elijah French, to have and enjoy the occupancy of the said described premises during her natural life. Also, I give and devise to my said wife, Eliza, the use and occupancy of all my personal estate of every name and nature, during her natural life.

"*Fourth.* On the decease of my said wife, Eliza, I do hereby direct and empower my executor, hereinafter named, to sell and dispose of all my said real estate at public or private sale, at such time or times and upon such terms and in such manner as to him shall seem most advantageous, also to execute and deliver all necessary conveyances therefor.

"*Fifth.* The avails of such sale or sales of said real estate, together with the avails of my personal estate, after paying and discharging all of the provisions herein named, I hereby give and bequeath to my daughters, Eliza Tuke, Clarissa C. French and Ann Snell, to be divided equally between them, share and share alike.

"*Sixth.* In case any one or either of my said daughters shall die in my life-time, leaving issue or descendants, I direct that her share shall not lapse, but shall be paid to her child or children.

"*Seventh.* If in the opinion of my executor, hereinafter named, for any cause it shall in his judgment be advantageous and desirable to sell the whole or any part of said real estate before the decease of my said wife, Eliza Cotton, I do in such case hereby authorize and direct and empower my executor, hereinafter named, to sell and dispose of said real estate as provided for in item fourth of this will, provided, however, that my said wife shall consent to such sale; such consent shall be in writing, duly acknowledged and filed in the office of the surrogate before such sale shall be consummated.

"*Lastly.* I do hereby nominate and appoint Henry K. W. Bruce, of Lenox, aforesaid, to be executor of this, my last will and testament, hereby revoking all former wills by me made.

" In witness whereof I have hereunto set my hand and seal, this 1st day of December, 1868.

                              "WILLARD COTTON    [L. S.]"

January 20, 1872, the testator executed a codicil, of which the following is a copy:

' This is a codicil to my last will and testament, bearing date December the 1st, 1868. I, Willard Cotton, do hereby change the fourth item in my said will in manner following, viz.: That on and after the decease of my wife, Eliza Cotton, I direct that my daughter Clarissa French be allowed to have the use and occupancy of my Oak Hill farm, also the use of all carpenter and blacksmith tools in my shop during the term of her natural life, but upon the express terms and conditions hereinafter named, viz.: That she shall give to my daughter Eliza Tuke a good and comfortable support in her family, treating her with sisterly care and tenderness, and shall also pay to her annually, in money, fifty dollars, to be paid to said Eliza in semi-annual payments of twenty-five dollars, on the first day of July and January of each year, so long as said Clarissa shall retain the use and occupancy of said premises. Said Clarissa shall also pay to my daughter Ann Snell fifty dollars annually, to be paid to her in semi-annual payments of twenty-five dollars, on the first day of January and July of each year, so long as she shall retain the use and occupancy of said premises. Said Clarissa shall also keep said premises in as good a state of cultivation and care as when received by her, allowing no waste or unnecessary decrease in the value of the same; neither shall she allow the cutting of wood or timber from said premises, or any part of them, to any person, but the same shall be exclusively occupied by said Clarissa and her family. All of which conditions above named I request and require my said daughter Clarissa faithfully to keep, and perform, each and all the conditions above named, and a failure on her part to keep and perform any and all the conditions herein contained shall cause the provisions made in this codicil for /her benefit to lapse and be of no favor or virtue. I also direct that in case any dispute or disagreement shall arise as to the construction or right of parties under and by my last will and testament, also this codicil, that the above shall be submitted to the surrogate of Madison county for decision, and his judgment or direction of the matter shall be binding and conclusive on all persons interested in my estate."

September 30, 1873, Willard Cotton executed a second codicil, but

it does not relate to any of the rights or questions involved in this action.

Willard Cotton and Elijah French owned the twenty-four acres mentioned in said will, jointly. April 9, 1874, said Willard Cotton and Eliza, his wife, said Elijah French and Clarissa C., his wife, conveyed to Ann Snell three-fourths of an acre out of said twenty-four acres, upon the recited consideration of $1,000. It is stated in the deed that : "The consideration of this deed is $500, a gift of the parties of the first part, and the other $500, the arrangement of the party of the second part to relinquish all her right, title and interest, prospective as heir-at-law of Willard Cotton and wife, in the twenty-four acres, of which said three-fourths acre is a part, so that the twenty-four acres shall be free and clear of her claim, as heir, as aforesaid." On the same day Ann Snell executed an instrument under seal, which was duly acknowledged May 28, 1874, by which she acknowledged the receipt of the aforesaid conveyance, and that the same was in release and satisfaction of all her present and prospective interest in said twenty-four acres, as heir-at-law of said Willard Cotton.

September 1, 1874, said Willard Cotton died, leaving him surviving, Eliza Cotton, his widow, Hamilton Cotton, a son ; Ann Snell, Clarissa C. Cooper (formerly French), Eliza Tuke, daughters ; Jeanette Wager and Emma Campbell, granddaughters, the daughters of Harry Cotton, a deceased son, only heirs-at-law, and next of kin, of said Willard Cotton. September 28, 1874, the aforesaid will and codicil was duly probated. The testator's widow, Eliza Cotton, used the personal estate, the fifty acres and the undivided half of the twenty-four acres (less the three-fourths of an acre conveyed to Ann Snell), until March 30, 1880, when she died, leaving as her heirs-at-law and next of kin, her children and grandchildren, above enumerated, as the heirs-at-law of Willard Cotton, deceased. After the death of Eliza Cotton, Clarissa C. French occupied said fifty acres and performed all of the conditions of said codicil until October 1, 1880, when Eliza Tuke died, leaving a last will and testament, by which she devised and bequeathed all of her estate unto Clarissa C. French, which will was duly probated April 25, 1881. Said Clarissa C. French continued to occupy said fifty acres and performed the conditions of said codicil until April 1,

1885, when said Clarissa C. French intermarried with one Charles C. Cooper, removed ftom said premises and refused to longer perform the conditions of said codicil, that is, pay Ann Snell fifty dollars per annum. The plaintiff brings this action, claiming (1) that under said will and codicil, the daughters, Clarissa, Eliza and Ann, did not acquire a vested interest in the estate of said testator until after the determination of the conditional life estate devised to Clarissa, and that Clarissa took nothing by the will of Eliza ; (2) that the power of sale in said will was revoked by the codicil, and demanded a judgment so construing said will and codicil, and restraining the administrator with the will annexed from selling the real estate.

The court, at Special Term, held (1) that under the deed and agreement of April 9, 1874, said Ann Snell accepted of the conveyance of said three-fourths of an acre in satisfaction of all her interest in the devise of the undivided half of the twenty-four acres, which interest in said devise was thereby released, and went, under said will and codicil, to Clarissa C. Cooper and Eliza Tuke, and through the will of Eliza Tuke, Clarissa C. Cooper became the sole owner of said undivided half of said twenty-four acres ; (2) that the three daughters took vested interests in the fifty acres under said will, subject to the power of sale vested in the executor, and that the third devised to Eliza Tuke was carried by her will to Clarisa C. Cooper ; (3) that the power of sale in said will was not revoked by said codicil.

The judgment directed that the fifty acres be sold, and out of the avails, each party be paid a bill of costs and one-third of the remainder be paid to Ann Snell, and two-thirds to Clarissa C. Cooper. Thus far the parties to this action are agreed. But the plaintiff insists that the interests devised to the daughters in the fifty acres did not vest at the testator's death, therefore Clarissa C. took nothing under the will of Eliza, and that Clarissa C. and Ann are each entitled to one-half of the avails arising from the sale of the fifty acres. In support of this contention the plaintiff invokes the aid of the general rule, that when the payment of a legacy is charged upon land, and the legatee dies before the time for payment arrives, the legacy does not vest, but sinks into the land for the benefit of the heir unless it appears that the testator intended that the legacy should

vest. . This rule, with its limitations, is clearly stated by the following authorities.: 1 Jarman on Wills (Big.ed.), 834; Hawkins on Wills (2d Am. ed.), 234; *Loder* v. *Hatfield* (71 N.Y. 102). When a will directs real estate to be converted into money and divided between legatees, it is to be treated as personal estate; and if the legacy is vested and the legatee dies before the sale, the legacy goes to the next of kin, instead of to the heir of the deceased legatee. (1 Jar. on Wills [Big. ed.], 586; 1 Will. Ex. [6th Am. ed.], 729; *Kane* v. *Gott*, 24 Wend., 641.)

In *Elliott* v. *Fisher* (12 Sim., 505), land was directed to be sold after the termination of a life estate and the avails paid to a legatee, who died before the termination of the life estate, and it was held that the legacy vested, and went to the personal representative, instead of to the heir of the deceased legatee.

The sixth clause of this will shows that the testator intended that the interests devised to his daughters should vest at his death. In this clause he provides that if either daughter dies in his lifetime, leaving issue, that the issue shall take the share, but he makes no provision as to what shall become of the interest of a daughter dying after his death and before the termination of the life estate. There is nothing in this will or codicil evincing an intention that the avails of this. farm should not vest, but, on the contrary, the testator's intention. to make a complete disposition of the residuum of his estate is manifest throughout both instruments, and there is nothing in the language of either indicating that the daughter's interest should not vest at his death.

The appellant relies upon *Vincent* v. *Newhouse* (83 N. Y., 505), and *Shipman* v. *Rollins* (98 N. Y. 311). We do not think either case changes the well established rule, that when specific real estate is directed to be converted into money at a future day and the avails divided among legatees, that the rules applicable to personal bequests are to control. In *In re Hart's Trusts* (3 De Gex & J., 195, 203), it was said: "I have not met with any case in which it has been held that the rules as to vesting which apply to legacies charged on land are to be applied to legacies given out of moneys to arise from the sale of the land." (See, also, *Elliott* v. *Fisher, supra*). In *Vincent* v. *Newhouse*, the will directed that in case either of the legatees died without issue before the legacy was payable, that

the share of the legatee so dying should be equally divided between the surviving legatees. This was a plain direction that the legacies should not vest until the time arrived for their payment. The legacies in the case last cited would not have vested if they had been payable out of the personalty, instead of out of the realty. In *Shipman* v. *Rollins* (*supra*), the legacies over which the case arose were given to unincorporated societies which were incorporated after the testator's death, and before the time for payment. The legacies could not vest at the death of the testator because the societies were not then incorporated and authorized to take, and the question arose, whether the testator intended that the legacies should vest at his death, or at the death of his widow, when they became payable. From the language of the will it appears that the testator knew that the societies were not then incorporated and in a condition to take, and it was held that his intention was to vest the legacies at the death of his widow. We find nothing in this case which militates against the rule that when land is to be converted into money and distributed among legatees that the bequest is to be governed by the rules applicable to pecuniary legacies.

The interests of the three sisters in the fifty acres vested at the testator's death, and Clarissa C., under the will of Eliza, acquired a two-thirds interest therein. The codicil does not affect the undivided one-half of the twenty-four acres devised by the testator's will, and the question as to when the interests in that vested need not be considered, because all of the parties agree that the sisters' interests in the twenty-four acres vested not later than the death of the mother, at which time the three sisters were living, and Eliza's interest was carried by her will to Clarissa C. The only question arising over this parcel is whether the plaintiff, by the deed and release of April 9, 1874, satisfied and discharged the interest devised to her in this parcel by her father. That such was the intention of the parties to the deed is substantially found in the ninth finding, which the plaintiff has not challenged.

When a legatee, subsequent to the execution of the will, receives from the testator property in lieu of the legacy, the legacy is satisfied. (2 Will. Ex. [6th Am. ed.], 1428; 2 Redf. Wills, 431 ; Pom. Eq. Juris., § 524; *Beck* v. *McGillis*, 9 Barb., 35, 56.) The plaintiff's legacy, being governed by the rules applicable to pecu-

niary legacies, was satisfied by the conveyance. _Burnham_ v. _Comfort_ (37 Hun, 216) does not hold that a devise cannot be satisfied by a subsequent conveyance of land, but that a devise cannot be satisfied by a subsequent payment of money. Under the deed and release the plaintiff parted with her interest in the twenty-four acres. Eliza Cotton, at her death, left sixty acres of land and a will and codicil executed concurrently with the will and codicil of Willard Cotton. These wills and codicils, so far as they relate to real estate, are exactly alike, except that the husband devises his wife a life estate in his land, and the wife a life estate in her land to her husband; and the same construction must be given to both wills.

The judgment of the Special Term is affirmed, with costs against the appellant.

HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs.