## SUPREME COURT

### WEVER Appellant agt. MARVIN Respondent

*It seems,* that appeals from all decrees or sentences of surrogates should be first heard at *general term.*

*Quere?* Whether, under the statute, the power exists to hear such appeals by a justice at special term?

A petition of a creditor for an order of a surrogate requiring executors to render an account of their proceedings, is sufficient, if it state "that the applicant is a creditor of the deceased (naming him), and as such has claims against the estate of said deceased." The statute authorizing such application has reference exclusively to the *personal* estate of the deceased; it is not, therefore, absolutely necessary to specify, in terms, that the applicant has claims against the *personal* estate.

An individual named as executor in the will, but not in the letters testamentary, and never having appeared in the surrogate court and qualified, is by statute (2 *R. S.* 71, § 15), superseded, and has no power or authority whatever as executor.

The surrogate can not make an order that such an individual account as executor, although he may in some respects have acted as such. It is a question of *power.*

Where it appears that such an individual has in some matters, in relation to the estate acted as an executor, such acts can not operate as an estoppel to the allegation of non executor, so as to give the surrogate power to call him to an account. The doctrine of estoppel *in pais* does not apply in such a case.

*Albany Special Term, August* 1852. *Appeal from part of an order or sentence of the surrogate of the county of Albany.* On the 17th March 1852, Nicholas Wever presented his petition to the surrogate of the county of Albany, praying that an order might be granted that Francis I. Marvin and Uriah Marvin render an account of their proceedings as executors of the last will and testament of Uriah Marvin, deceased.

The petition stated that Wever "is a creditor of Uriah Marvin, late of the city of Albany, deceased, and as such has claims against the estate of said deceased." It gave no description of his demands, or whether the claim was against the personal or real estate of the deceased.

On the 4th May 1852, the parties appeared before the surrogate, and Wever called for the account of the Marvins as executors,

Wever agt. Marvin.

which they declined to produce, and thereupon Wever moved that an attachment issue against them. This was objected to on the part of the Marvins on the ground that they deny that Wever is a creditor, or has any demand against the estate; which objection was overruled by the surrogate.

It was further objected to the issuing of an attachment against Uriah Marvin on the ground that the record of the surrogate did not show that letters testamentary had issued to the said Uriah; and as proof of this, presented the book of record of letters testamentary   It appeared affirmatively from the record that letters testamentary had been issued only to Francis I. Marvin, one of the executors named in the will of the deceased, and these issued on the 21st December 1848.

In opposition to this objection, Wever claimed that Uriah Marvin, having acted as executor, is by such act estopped from denying that he is such executor; and to maintain this point he presented in evidence from the files of the surrogate's court the copy notice of appraisal of the personal estate, and the affidavit annexed to the inventory of said estate. The notice of appraisal purported to be signed by Uriah Marvin, as executor, and also the affidavit annexed to the inventory.

On the 8th June 1852, the surrogate made a decree or sentence, as follows:

" On reading and filing proof of due and personal service of citation on Francis I. Marvin, one of the executors above named, and like service upon Uriah Marvin having been admitted, and upon application for an attachment against the said Francis I and Uriah, Ordered, that an attachment issue out of and under the seal of this court to be directed to the sheriff of the county of Orange, to arrest the said Francis I. Marvin, and to bring him before the surrogate of Albany, at his office in the city of Albany, on the 12th July 1852, at 10 o'clock A. M., to answer for his misconduct herein; and that the penalty in which the said Francis I. shall give bond for his appearance to answer upon said attachment be five hundred dollars: and it is further ordered, that the application for an attachment against the said Uriah Marvin is denied."

On the 9th June 1852, Wever appealed from that part of the

sentence, or decree, denying an attachment against Uriàh Marvin.

H. S. McCALL, *for Appellant.* .

NORTHROP & WILLIAMS, *for Respondent.*

WRIGHT, Justice.—I doubted on the argument of this appeal as to the power to hear it at special term. I can not say that subsequent examination or reflection have satisfied me that the power exists. The Revised Statutes provided that an appeal of this kind might be made to the Court of Chancery (2 *R. S.* 610, § 104). The Court of Chancery being abolished, its powers and jurisdiction were conferred on the Supreme Court (*Judiciary Act of* 1847, § 16). The judiciary act provided that the justices of the present Supreme Court should possess the powers and exercise the jurisdiction possessed and exercised by the late justices of the Supreme Court, chancellor, vice-chancellors and circuit judges, so far as the powers and jurisdiction of said court and officers were consistent with the constitution and provisions of the judiciary act (§ 16). Formerly an appeal of this kind was heard by the chancellor, whether at a regular or special term of this court, can be, it seems to me, of no consequence to inquire. An appeal from the determination (in an appealable case, was directly to the Court for the Correction of Errors. Now the appeal from the surrogate is to the Supreme Court; but whether to be heard at general or special term, is the inquiry. If heard at special term, the effect will be to give three appeals; for it will hardly be contended that either party may appeal directly to the Court of Appeals from any order or decree I may now make. On the other hand, if an appeal can be taken in the present case from the special to the general term, it will be equivalent to appealing under the old system, from the chancellor to the chancellor. My impression is, that appeals from all decrees or sentences of surrogates should be first heard at general term; but as the parties desire that I should entertain this case, I will briefly examine it on the merits.

Wever presented his petition to the surrogate of the county of Albany, praying that Francis I. Marvin and Uriah Marvin render an account of their proceedings as executors of Uriah

Wever agt. Marvin.

Marvin, deceased. An executor after the expiration of eighteen months from the time of his appointment, may be required to render an account of his proceedings by an order of the surrogate, to be granted upon application from some person having a demand against the personal estate of the deceased, either as creditor, legatee, next of kin, or of some person in behalf of any minor having such claim; or without such application (2 R. S. 92, § 52) When Wever made the application, more than eighteen months had elapsed from the time of granting letters testamentary. His petition stated that he was " a creditor of Uriah Marvin, late of the city of Albany, deceased, and as such has claims against the estate of said deceased."

This was all that was set forth in the petition or otherwise, as to his being a creditor, or the nature of his claim.

The order of the surrogate was not made upon his own motion, but upon the application of Wever; and the first question arising upon the appeal is, whether enough appeared in the petition upon which the citation was issued to show that Wever, the applicant, was " a person having a demand against the personal estate of the deceased," as a creditor.

It is stated that he has claims against the estate of the deceased as a creditor. It is not stated to be sure, in terms, that as creditor he has a claim against the *personal* estate; but I think the allegation can not very well be understood in any other sense.

The petitioner is applying to the surrogate for an order that the executors render an account of their proceedings in relation to the *personal* estate alone; and it is upon such application that the allegation is put forth of his claims as creditor against the estate of the deceased.

The Marvins having appeared before the surrogate, they declined to produce any account, whereupon Wever moved that an attachment issue against them.

The issuing of an attachment against Uriah Marvin, was objected to on the ground that he was not an executor; letters testamentary having been issued only to Francis I. Marvin, which latter fact was affirmatively shown. The surrogate made an order granting the attachment as against Francis I. Marvin, but denying it as against Uriah Marvin.

The Revised Statutes provide that " every person named in a will as executor, and not named as such in the letters testamentary or in letters of administration with the will annexed, shall be deemed to be superseded thereby, and shall have no power or authority whatever, as such executor, until he shall appear and qualify " (2 $R.$ $S.$ 71, § 15). In this case, it appeared affirmatively, that although Uriah Marvin was named in the will as executor, he was not named as such in the letters testamentary; nor was there any proof that he had ever appeared in the surrogate's court and qualified. By the express provision of the statute he was superseded, and had no power or authority whatever as executor.

The surrogate could make no order that he account as executor. He had not been appointed by the surrogate, and though named in the will, was by the force of the statute superseded and divested of all power and authority.

The counsel for the appellant insists, that as he signed the notice of appraisal, and subscribed and swore to the affidavit annexed to the inventory, he is estopped from denying that he is executor. But the doctrine of estoppel *in pais* can not be applied.

The surrogate can not make or enforce an order that a person account as executor to whom letters testamentary have not issued pursuant to the provisions of the statute. He must have been appointed according to law, and not a mere wrong doer interfering with the estate, to give the surrogate jurisdiction over him. An executor *de son tort* is chargeable as such, and may be sued as executor generally: but a surrogate has no power under section 52, chapter 6, article 3d, title 3d, part 2d of the Revised Statutes, to call an executor *de son tort* to account.

The question in this case was one of power with the surrogate. As I view it, he might as well have called upon any other person not named in the will, but who chose to sign the notice of appraisal and swear to the affidavit annexed to the inventory, as upon Uriah Marvin to account before him.

In an action by the proper parties, if Uriah had taken possession of the personal estate, he not being administrator or executor, he would undoubtedly be liable and under certain circum-

stances the doctrine of estoppel might be applied; but tne power of the surrogate to enforce an accounting is limited to the executor or administrator to whom letters have issued according to law, and who have appeared and qualified. Here, it affirmatively appeared that Uriah Marvin was not named in the letters testamentary.

He had not been appointed according to law, executor, and although named in the will as such, had by operation of the statute been superseded.

I think there is no error in the order of the surrogate; and that it should be affirmed.