JOHN QUACKENBUSH, APPELLANT, v. HENRY QUACK-ENBUSH, SANDFORD QUACKENBUSH AND LEVI WALRATH, RESPONDENTS.

*Will — when residuary legatees and devisees do not become personally liable for legacies the payment of which is charged on the residuary estate — statute of limitations — when the right to foreclose a lien to secure a legacy charged on the property is not barred by it.*

Adam Quackenbush died in June, 1866, leaving a will by which, after providing for the maintenance of his wife during her life, he among other things gave to his daughter Betsey $200 one year after his decease. All the rest, residue and remainder of his estate, not therein otherwise disposed of, and after the payment of his debts and legacies, he gave, devised and bequeathed to his three sons and to their heirs and assigns forever, after the payment of legacies, which legacies he made a lien on all his real and personal estate until paid and satisfied. The

testator left personal property sufficient to pay the debts and legacies, but the sons, who were named as executors, refused to qualify, and the estate was never administered, although the sons took the property and converted it to their own uses.

In 1883 this action was commenced by the plaintiff, to whom Betsey had assigned her claim to the legacy, to enforce the payment thereof by a foreclosure of the lien and a sale of the premises.

*Held,* that the residuary legatees and devisees did not, by accepting and using the property, become personally liable to pay Betsey her legacy. (LEARNED, P. J., dissenting.)

That Betsey's right of action against an administrator of the testator's estate would not be barred, as no judicial settlement had been had.

That any action brought by an administrator of the deceased, if appointed against the residuary legatees as wrong-doers in converting the personal property would, however, be barred by the statute of limitations.

That Betsey consequently had no remedy other than the lien on the land by which she could collect her legacy.

That her equitable right to foreclose the lien would, under the circumstances of this case, subsist for at least twenty-two years from the death of the deceased.

That the action could be maintained.

APPEAL from a judgment dismissing the complaint entered in Montgomery county, upon the report of a referee.

Adam Quackenbush died June 10, 1886, leaving a will by which he gave to his widow, Peggy, her support during life, with a right to occupy part of the homestead, and made it a lien on all his property, real and personal. To Betsey, his only daughter, he gives $200, one year after his decease. To his youngest son, Sandford, $255, providing the four notes signed with his sons John and Henry, for $460, are unpaid at his death; if paid, Sandford is to have $100 one year after his death. The will then provided, " All the rest and residue of my estate, not herein otherwise disposed of, and after payment of my debts and legacies aforesaid, I give, devise and bequeath to my three sons, named John, Henry and Sandford, and to their heirs and assigns forever, share and share alike, after the payment of the legacies above mentioned; and which legacies I hereby make a lien on all my real and personal estate until paid and satisfied.

This action was brought in February, 1883, by the plaintiff, to whom Betsey had assigned her claim, to enforce the payment of the legacy by foreclosing the lien given upon the real estate of the deceased by a sale thereof.

*H. Link,* for the appellant.

*Wendell & VanDeusen,* for Henry Quckenbush, respondent.

*B. A. Ransom,* for Sandford Quackenbush and Levi Walrath, respondents.

LANDON, J.:

The referee held that the statute of limitations barred the plaintiff's action. This conclusion seems to rest upon the proposition that the defendants, Henry and Sandford Quackenbush, who, with the plaintiff, are the residuary legatees and devisees under the will of Adam Quackenbush, by accepting the devise and bequest to them became personally liable for the payment of the legacy of $200, to their sister Betsey. The legacy was, by the terms of the will, payable one year after the testator's death, which occurred June, 1866, and therefore the right of action accrued to her against them upon their personal liability in June, 1867, and hence was barred either by the six or ten years' limitation ; that the lien upon the land devised was controlled by the same limitation. (*Loder* v. *Hatfield,* 71 N. Y., 92.)

If, however, it is not true that the residuary devisees became personally liable to pay Betsey her legacy, then the above conclusion does not follow, and the only remedy available to Betsey to recover her legacy was by the due course of administration to enforce its payment out of the personal property of the testator, and that failing or being shown to be unavailing, then to foreclose her lien upon the land. In the latter case, her remedy would not be barred until at least six years after the judicial settlement of the administrator's or executor's account. (Code Civil Pro., § 1819.)

The legacy to Betsey is not, by the terms of the will, made payable by the residuary legatees or devisees out of the residuary estate ; nor is it made payable by them as the condition of the gift to them of such estate ; nor is it in any way to proceed from the residuary estate. The residuary estate is carved out of what shall be left " after payment of my debts and legacies aforesaid." By accepting the residuary estate the defendants were not confronted with any payment to Betsey charged upon that estate or upon themselves; and therefore could not, by accepting it, be held to have promised payment. But the testator made that legacy a " lien on all my real

and personal estate until paid and satisfied." The estate that came to the defendants' hands came with the lien upon it. That lien confers the right upon Betsey to have the aid of a court of equity to enable her to sell the estate if necessary for her payment. This action is to foreclose that lien. The lien is not the security for any personal obligation of the defendants, but for the gift of the testator, and is enforceable because no other remedy remains to the legatee to enforce payment of the legacy.

The testator left ample personal property to pay debts and legacies. This personal property was the primary fund for the payment of this legacy. The portion of it necessary to pay this legacy was not bequeathed to the residuary legatees. If they could take it at all they could only rightfully take it as executors in the first instance, and for the purposes of administration.. They declined, although named as executors, to take out letters testamentary, and no administration has ever been had upon the estate. They nevertheless took the personal property and converted it to their own use. They took it as wrong-doers, not as legatees or executors. As wrong-doers the will did not make them personally liable to Betsey. This did not give Betsey the right to sue them to recover her legacy. It gave her the right to have an administrator appointed, and such administrator would have had the right to recover from them this personal property or its full value. (2 R. S., 81, § 60 ; Id., 449, § 17 ; *Muir* v. *Trustees, etc.*, 3 Barb. Ch., 477 ; *Brown* v. *Brown*, 1 id., 195 ; *Wever* v. *Marvin*, 14 Barb., 376.)

Such proceeding has not been resorted to. We know of no statutory prohibition to a resort to it now. But the statute of limitations (Code Civil Pro., § 392), if such an administrator should now be appointed, would date his appointment within six years from the death of the testator, and his action, if now brought against the residuary legatees to recover the personal property or its value which was of the estate, would be barred by the second six years. (Code Civil Pro., §§ 382, 3343, sub. 10.)

Betsey, therefore, is in this position : Since there has been no judicial settlement, her right of action against the administrator for her legacy is not barred. The lien of the legacy upon the real estate exists, by the express terms of the will, so long as her right to enforce the payment of the legacy exists. She can enforce that

lien against the real estate when her remedy against the personal becomes unavailing. It has become unavailing because the statute of limitations would bar any action to be brought by an administrator, if he should be appointed. She, therefore, has no other remedy to collect her legacy than by foreclosing her lien.

This is an equitable remedy, and if, as we doubt, the statute has begun to run against it, it did not begin to run until the legal remedy, through administration, became unavailing; it did not so become until twelve years after the death of the testator. Her equitable remedy subsists at least for ten years more (Code Civil Pro., § 388), or, in this case, twenty-two years from the testator's death.

We think the action is not barred. The plaintiff is the assignee of Betsey; he was one of the residuary devisees and legatees; he mortgaged his undivided one-third of the real estate to his brother, the defendant Henry, who subsequently purchased it upon a sale under this mortgage. Henry thus became the owner, subject to the lien in favor of Betsey. We see no reason why she could not subsequently sell this lien to the plaintiff. The defendant Walrath purchased the land after the commencement of the action, and upon indemnity against the lien. He is in no better position than his grantors.

Judgment reversed, reference discharged, new trial granted, costs to abide event.

BOCKES, J., concurs for reversal.

LEARNED, P. J. (dissenting):

The testator, after providing a maintenance for his widow, gave a legacy of $200 to his daughter Betsey, and another to his youngest son. He then gave all the residue, "after the payment of my debts and legacies as aforesaid," to his three sons, share and share alike, "after the payment of the legacies above mentioned, and which legacies I hereby make a lien on all my real and personal estate, until paid and satisfied." He made these three sons executors.

Although this does not in express words say that these residuary legatees are to pay the pecuniary legacies, still I think that a fair construction of the language, under the decisions, imposed a personal liability on these residuary legatees, in case they accepted their

devise and bequest, especially if they did so without administering on the estate.

The devise and bequest is "after the payment of the legacies." The three sons claimed to own each one-third of the farm, and so possessed and enjoyed it. The personal property was allowed to remain thereon. And there is abundant proof that they accepted the residuary devise and legacy ; although no letters testamentary were issued. Now it is true that, in many cases where acceptance of a devise charged with a legacy has been construed to make a personal liability to pay, there have been express words to the effect that the devisee was to pay the legacy. (*Gridley* v. *Gridley*, 24 N. Y., 130.)

And here the testator, first speaking of the residue, after payment of debts and legacies, gives it both real and personal to his sons " after the payment of the legacies above mentioned." That is, they were to have the residue on condition that they should pay the legacies ; which were also made a charge on the real and personal. They, too, were the executors.

Whether the legacies were payable out of personal or real was immaterial, because the whole residue went to these sons. And when, without taking out letters testamentary, they accepted this devise and legacy, and took all the property under this clause of the will, being entitled thereto only " after the payment of the legacies," they became personally bound to make such payment.

It may be noticed that in speaking of the residue, the testator describes it as the residue after " debts and legacies." Then when he gives this residue to the sons, he says " after the payment of the legacies." The words are not a mere idle repetition. He did not require the sons personally to pay his *debts*. But he did require them to pay these *legacies*.

In this view the action was barred and the judgment should be affirmed with costs.

Judgment reversed, new trial granted, referee discharged, costs to abide event.